The **FEDERAL DEPOSIT INSURANCE CORPORATION, a corporation organized under the laws of the United States, and acting in its corporate capacity, Plaintiff,**

v.

Charles R. **CANFIELD, Benjamin F. Armstrong, Theodore May, Newell P. Parkin, Mac Christensen, Richard A. Christensen, Dale R. Curtis, Frank Diston, Robert Garff, Lee K. Irvine, Ellis Ivory, Arch Madsen, Gus Paulos, Aline Skaggs, Ronald Swenson, Harold W. Milner and Ernest Wilkinson, Defendants.**

No. 90–C–0541–S.

United States District Court,
D. Utah, C.D.

April 25, 1991.

Stephen L. Roth, W. Cullen Battle, Fabian & Clendenin, Warren Patten, Craig J. Jacobsen, Jathan W. Janove, Van Wagoner & Stevens, Salt Lake City, Utah, Jeffrey Ross Williams, F.D.I.C., Legal Div., Washington, D.C., for plaintiff.

Daniel L. Berman, Patricia A. O'Rorke, Peggy A. Tomsic, Berman and O'Rorke, Douglas J. Parry, Parry & Murray, John W. Lowe, Michael N. Zundel, Jardine, Linebaugh, Brown & Dunn, Roger H. Hoole, Mark R. Madsen, Lynda Cook, James R. Holbrook, Callister, Duncan & Nebeker, Dale J. Lambert, George J. Romney, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION

SAM, District Judge.

### I. BACKGROUND

This matter is before the court on the motion of defendants Charles R. Canfield, Benjamin F. Armstrong, Theodore May, Newell P. Parkin, Mac Christensen, Richard A. Christensen, Dale R. Curtis, Robert Garff, Lee K. Irvine, Arch Madsen and Ernest Wilkinson to dismiss the complaint. Defendants Aline Skaggs, Ellis Ivory, Ronald Swenson and Frank Diston either filed separate, but substantially similar, motions to dismiss or joined in the present Canfield, et al. defendants' motion to dismiss. The magistrate heard the motion on October 30, 1990 and subsequently issued a report and recommendation ("R & R") that the action be dismissed. The FDIC objected to the R & R. The parties presented oral argument to this court March 7, 1991. Jeffrey Ross Williams and Warren Patten appeared for plaintiff Federal Deposit Insurance Corporation ("FDIC"). Daniel L. Berman, James R. Holbrook, Morris O. Haggerty and George J. Romney appeared for defendants.

The issue before the court is whether 12 U.S.C. § 1821 permits the FDIC to sue former directors or officers of a federally insured depository institution in Utah for monetary damages for conduct amounting to less than gross negligence. The FDIC filed this action against former directors and officers of Tracy Collins Bank & Trust Company seeking $7 million in damages for "imprudent" loans made or approved by the defendants, and damages for waste of bank assets and mismanagement. The complaint contains two causes of action: (1) breach of fiduciary duties; and (2) breach of contract (written or oral employment agreements or directors' oaths).[1]

---

1. The FDIC filed a First Amended Complaint January 7, 1991. The First Amended Complaint contains four causes of action. The first two are essentially identical to those contained in the original complaint. The third and fourth causes of action assert claims against defendants Armstrong, Canfield and May for restitution/rescission of excessive compensation received or claimed by these defendants and for a preliminary injunction. The defendants have moved to dismiss the first two causes of action of the First Amended Complaint on the same grounds contained in the original motions to dismiss. Accordingly, this Memorandum Deci-

The motion to dismiss is based on Section 212(a) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (August 9, 1989), codified at 12 U.S. C.A. § 1821(k) (1989) (hereinafter referred to as "§ 1821(k)"). § 1821(k) reads:

(k) Liability of directors and officers.

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution,

(2) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or

(3) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance provided under section 1823 of this title,

for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

## II. PARTIES' POSITIONS

Defendants argue that § 1821(k) establishes a federal standard for the liability of directors and officers of insured depository institutions for money damages in civil actions by the FDIC. That federal standard limits the liability of directors and officers in such actions to fault amounting to gross negligence or a higher degree of culpability. Since the complaint does not present claims for aggravated fault, but merely alleges claims for negligence or simple breach of the defendants' duty of care, defendants argue that it must be dismissed for failure to state a claim upon which relief can be granted, among other reasons.

Defendants allege their position is supported by the plain language of § 1821(k), language that was adopted for the first time by the Conference Committee; the legislative history of § 1821(k) contained in the Conference Committee report and elsewhere; and the sound public policy implemented by Congress to balance the government's need to recover money damages for conduct amounting to aggravated fault on the part of directors and officers with the need to insure that competent and qualified people serve on bank and thrift boards. Defendants argue that this balance is intended to be accomplished through the adoption of a national standard of liability for gross negligence or a higher degree of aggravated fault.

The FDIC's position is that, consistent with the objectives of FIRREA, § 1821(k) preserves the ability of the FDIC to bring suit, when authorized by state law, for monetary damages against directors and officers for ordinary negligence. It relies on the last sentence of the statute which reads: "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." The FDIC urges that § 1821(k) only limits the ability of states to insulate directors and officers by imposing a minimum liability standard of gross negligence or intentional tortious conduct. Utah law does not insulate directors and officers with such a standard, but requires only a showing of negligence. Utah law is, therefore, unaffected by § 1821(k), and the FDIC is authorized under Utah common law to hold defendants personally liable for ordinary negligence.

Like defendants, the FDIC argues that its position is fully supported by a literal interpretation of the statute. It contends further that its interpretation is reinforced by the compelling legislative history, the stated purposes of FIRREA, and the

---

sion and its dictates, although filed in response to the motions to dismiss the original com-

plaint, apply to counts I and II of the First Amended Complaint.

strong public policy favoring holding officers and directors liable for their mismanagement and other wrongdoing.

The court will address each of these tools for statutory interpretation and their application to § 1821(k).

## III. RULES OF STATUTORY CONSTRUCTION

### A. The Plain Language of § 1821(k) Holds Directors and Officers Personally Liable for Gross Negligence or a Higher Degree of Fault

 This court agrees with both parties that the plain language of a statute is controlling in the interpretation of a statutory provision. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. ——, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) ("The starting point for interpretation of a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.") (citation omitted).[2]

§ 1821(k) clearly states:

"A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by ... the Corporation ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct as such terms are defined and determined under applicable State law...."

This part of the statute expressly defines the parameters of liability for officers and directors where the FDIC is acting as a successor in interest to the claims of a depository institution. It carefully sets the standard and defines the terms used, including a reference to state law where one is intended and encompassed. This portion of the statute, standing alone, does not leave room for any interpretation other than that urged by defendants. Congress clearly intended to preempt conflicting state and federal law on the issue of director and officer liability in this area and set a standard of gross negligence. However, the last sentence of § 1821(k) has created a dispute regarding the scope of that preemption.

The last sentence of § 1821(k) states: "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." The FDIC argues that the plain meaning of this last sentence, when combined with the other provisions of the statute cited above, creates a partial preemption of state law. This partial preemption overrides state laws which set a standard higher than gross negligence for claims against directors and officers for money damages, but leaves intact the statutory and common law of states, like Utah, which allow suits based on ordinary negligence or breach of fiduciary duty. This interpretation results in a chaotic situation where the liability of directors and officers of federal depository institutions is governed not by a uniform federal standard, as surely was intended by this sweeping federal legislation governing the issue, but by varying state standards which leave liability and exposure mostly dependent on state of residence. Congress did not intend and this court does not read that result as the plain meaning of the statute.

To read the last sentence of § 1821(k) as suggested by the FDIC would require this court to ignore the plain meaning of the rest of the statute. Where Congress wanted to reference and incorporate state law they did so, as in the sentence immediately preceding the disputed last sentence. To construe the phrase "other applicable law" to include and refer to state law which permits suits against officers and directors for simple negligence, in view of the conspicuous absence of any such reference in the other detailed provisions of the statute,

---

**2.** *See also In re George Rodman, Inc.,* 792 F.2d 125, 128 (10th Cir.1986); *Monterey Coal Co. v. Federal Mine Safety & Health Review Commission,* 743 F.2d 589, 595–96 (7th Cir.1984); 2A *Sutherland Statutory Const.* § 48.06 (4th ed. 1984) ("Where the terms of a statute are clear and unambiguous, the legislative intent must be derived from it, even if the intent expressed conflicts with the purpose of the statute as set forth in committee reports.").

renders the specific, unambiguous standard of gross negligence and attendant parameters of liability established by the statute facially meaningless. This result would contradict "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative, ..." *See Mountain States Telephone and Telegraph Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (quoting *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979)).

The FDIC's strained partial preemption construction of § 1821(k) does not square with the plain language of the entire provision. The FDIC argues that § 1821(k) does not limit its enforcement powers but broadens them, giving it the right to sue officers and directors for gross negligence, even in states prohibiting such suits, while preserving all of its rights and powers which existed before FIRREA. However, as the defendants have demonstrated, the last sentence provides, "[n]othing in this paragraph shall impair or affect any right of the Corporation under *other applicable law.*" (Emphasis added). If nothing in the paragraph impairs or affects any right of the Corporation under *other* applicable law, § 1821(k) must be the applicable law which does impair the rights of the Corporation. The phrase "other applicable law" has no meaning unless, as urged by defendants, there is some applicable law under which the rights of the FDIC are impaired. This court believes Congress intended § 1821(k) to be that impairing legislation.

Because this court declines to read the "other applicable law" provision of the last sentence of § 1821(k) as undermining the

uniform federal standard of gross negligence established by Congress in the rest of the statute, it is necessary to determine the meaning and scope of the last sentence. This court is convinced that an appropriate reading of the last sentence, which gives meaning to the entire statute, *see Mountain States,* 105 S.Ct. at 2594, leads to the conclusion that the "other applicable law" referred to therein is the other sections of FIRREA.

As illustrated by defendants and the magistrate, the FDIC does have rights and claims under other applicable federal and state law against parties associated with insured depository institutions, including directors and officers, that are controlled by lower standards of liability than the aggravated fault standards of § 1821(k).[3] The court is not convinced, despite the FDIC's arguments, that utilizing the other sections of FIRREA highlighted by the magistrate as having lower standards of care, to explain Congress' insertion of the last sentence of § 1821(k), ignores the difference between open bank regulatory enforcement remedies and closed bank civil remedies. While the regulatory sanctions authorized by § 1818 may be distinct and independent from the FDIC's rights under other sections of FIRREA, this does not preclude the explanation adopted by this court for Congress' insertion of the last sentence of § 1821(k). The last sentence was meant to clarify any ambiguity regarding the different standards of liability which may apply in varied, but potentially related, enforcement and regulatory situations. This is a logical interpretation which also preserves the plain meaning of the rest of the paragraph.

**3.** The magistrate presented a detailed discussion regarding his conclusion that the "logical place to begin looking for the rights of the FDIC under 'other applicable law' is FIRREA." Report and Recommendation at 5. The R & R reviewed numerous provisions of FIRREA, including 12 U.S.C. § 1821(*l*) (which sets the parameters of liability for employees, agents, attorneys, accountants, appraisers, or any other party who provides services to an insured depository institution to recover damages resulting from the improvident or improper use or investment of assets), 12 U.S.C. § 1818 (which allows the FDIC to take certain actions against officers and directors, including obtaining cease-and-desist orders in certain enumerated situations, obtaining restitution and/or indemnification if a party recklessly disregards the law or was unjustly enriched, and having an officer or director removed from his or her position for breach of a fiduciary duty if the breach involved personal dishonesty or willful and continuing disregard for the safety or soundness of the institution), and 12 U.S.C. § 1818(i)(2) (which imposes civil penalties against an officer or director who breaches any fiduciary duty under certain conditions).

B. The Legislative History of § 1821(k) Fails to Express a Clear Legislative Intention

Although the court is persuaded that consideration of the statute's plain meaning disposes of this matter, the court will also address the parties' concerns regarding any alleged ambiguity which may surround the interpretation of "other applicable law," by consulting the legislative history of § 1821(k).

A wealth of information exists concerning the legislative history and intent behind § 1821(k). Documentation includes two preliminary versions of the § 1821(k) provision, a final version in conference, remarks of senators during a debate on the floor at the time the Senate version was passed, a section-by-section analysis drafted by the managers of the bill and a Conference Report. Because of this extensive history, the court has carefully probed to determine whether there is a "clearly expressed legislative intention" since, if not clearly expressed, the legislative history is of little interpretive value. *See Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (The plain meaning of the statute is conclusive "[a]bsent a clearly expressed legislative intention to the contrary.").

Section § 1821(k) has a long and confusing history. The earliest record of this provision was S. 774, 101st Cong., 1st Sess. § 214(n), a bill from the Senate Committee on Banking, Housing, and Urban Affairs considered by the Senate on April 13, 1989. According to this version, "Notwithstanding any provision of State law, a director or officer ... may be held personally liable ... for any cause of action available at common law, including, but not limited to, negligence."

Once this version was reported to the floor of the Senate, however, its managers amended it. As of April 19, 1989, the second version read:

A director or officer ... may be held personally liable ... for gross negligence or intentional tortious conduct, as those terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right, if any, of the Corporation that may have existed immediately prior to the enactment of the FIRRE Act.

At this point, the managers appeared to be concerned about various state "insulating statutes," granting officers and directors varying degrees of immunity from damage suits. As Senator Reigle, one of the managers, noted, "in Indiana, a director or officer is liable for damages only if his conduct constitutes 'willful misconduct or recklessness'." 135 Cong.Rec. S4278 (daily ed. April 19, 1989).

The Senate debated and passed the second version of S. 774 also on April 19, 1989. Remarks from several senators at that time, however, suggest a preference for a more general preemption of state law, rather than one that affected only "insulating statutes." For example, Senator Heflin expressed concern about a plan "which dramatically increases the enforcement authority of the regulators over all members of the financial institutional industry, including the members of the boards of directors." *Id.* at S4264. He wanted "to ensure that financial institutions are able to attract strong and capable individuals as directors and officers." *Id.* In addition, Senator Sanford expressed support for the managers' amendments as "essential if we are to attract qualified officers and directors to serve in our financial institutions." *Id.* at S4270.

On June 19, 1989, approximately two months after the Senate passed the second version of S. 774, the managers of the bill inserted a section-by-section analysis of the § 1821(k) provision into the Congressional Record. That analysis provides, in part, that § 1821(k)

does not prevent the FDIC from pursuing claims under State law or under other applicable Federal law, if such law permits the officers or directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence, or (2) on an alternative theory such as breach of contract or breach of fiduciary duty.

This explanation of § 1821(k) is problematic for several reasons. First, since it was not before the Senate at the time of enactment, it does not reflect the intent of the Senate nor can it serve as a reliable expression of legislative intent for purposes of statutory interpretation. In fact, it appears to be at odds with the understanding of some senators, as manifest by their remarks. Next, the section-by-section analysis was not directed to the final version of § 1821(k) since the provision was amended yet again in a subsequent conference. Finally, although supposedly a commentary on the second version as passed by the Senate, the analysis fails to consider the impact of the before/after distinction in the last sentence of the provision. It thus conflicts with a provision it is intended to explain.

The § 1821(k) provision was then sent to Conference Committee where it was amended, and a final version adopted August 4, 1989. This final version differed from the version passed by the Senate in two respects: (1) it included the phrase "including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence)," and (2) it included the phrase which is the source of the present dispute, "under other applicable law." Therefore, the phrase this court must interpret appeared only in the final version of the § 1821(k) provision and was never considered by the Senate as a whole.

Finally, the Conference Committee also provided a Conference Report addressing its amendments to the current § 1821(k). According to this Report, "[t]he preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct." The Conference Report suggests that § 1821(k) establishes a federal standard of aggravated fault such that officers and directors may not be held personally liable for conduct amounting to less than gross negligence, despite state law to the contrary.

After a careful study of the legislative history of § 1821(k), the court concludes that there is no "clearly expressed legislative intention" which conflicts with the court's understanding of the statute's plain meaning. Each revision and amendment to § 1821(k) as it traveled in and out of conference spawned new approaches to understanding the provision which are not easily reconcilable. The convoluted and contradictory nature of the proceedings culminating in the codification of § 1821(k) renders it impossible for the court to discover any meaningful legislative opinion about its purpose or impact. The court, therefore, declines to give weight to the legislative history in interpreting the phrase "under other applicable law."

C. Public Policy Supports a Uniform, National Standard of Liability

All parties agree that it is in the public interest for banks and thrifts to have qualified and competent people directing the affairs of financial institutions. Likewise, it is sound public policy to hold these high fiduciaries liable for intentional or grossly-negligent conduct in the administration of an institution's affairs. This court is convinced that Congress intended to promote both of these ideals by enacting § 1821(k).

§ 1821(k) strikes a balance by holding directors and officers accountable for aggravated fault or gross negligence while sheltering these individuals from personal liability under lower standards of fault, including ordinary negligence. One motivation for sheltering officers and directors from claims for ordinary negligence is the important interest in encouraging aggressive and ambitious leaders to take the necessary steps to remedy the financial institution crisis this country faces. To create a situation where, even if an institution is fortunate enough to lure competent people to sit on its board, directors and officers are fearful of having every decision second-guessed years later by those having the benefit of hindsight is not productive. Institutions and their officers and directors will be crippled, reluctant and ineffective. This is neither the climate Congress intended to create nor a situation that would benefit this nation.

Instead, Congress created a uniform, national standard to replace an increasingly confusing body of state law. This standard clearly establishes the parameters of liability for the benefit of officers and directors and the FDIC. Everyone now knows where they stand. Surely one of the goals of this legislation was to make liability dependent upon culpable conduct rather than state of residence.

Defendants' public policy arguments, which this court finds persuasive, also make more sense in terms of economic efficiency. The FDIC has urged that the public interest will be best served by allowing it to pursue officers and directors of failed institutions wherever and whenever possible and make them, instead of the taxpayers, pick up the bill for their negligence. However, given the varied and fluctuating status of state law in this area, the FDIC's goal under pre- or post-FIRREA conditions, if its interpretation is adopted, poses a serious enforcement problem in terms of manpower and dollars.

The cost of pursuing officers and directors of failed institutions is enormous. Congress saw that the public is best served when enforcement and regulatory efforts and dollars are directed toward conduct amounting to gross negligence or intentional wrongdoing rather than ordinary negligence or simple breach of fiduciary duty. By the very nature of a bank officer or director's duties, claims of ordinary negligence, without more, may only amount to questioning business judgments. Congress undoubtedly did not want the taxpayers to pay for this type of pursuit. Taxpayers will surely benefit from the careful screening necessitated by § 1821(k)'s standard of gross negligence since only in those cases where there is aggravated fault or intentional wrongdoing will costly litigation be pursued.

This court's ruling allows the FDIC's efforts and the taxpayers' dollars to be focused on truly culpable parties. It confirms Congress' intent expressed in § 1821(k) to create a national, uniform standard which the FDIC can enforce with greater efficiency than when it was forced to wind its way through the morass of state legislation engulfing the issue of director and officer liability. Uniformity saves money, time and manpower. In the midst of the financial institution crisis facing this nation these are goals worthy of serious consideration.

In short, analysis of the public interests associated with § 1821(k) compels adoption of an interpretation which creates a national, uniform standard of fault. Any other interpretation results in little improvement over pre-FIRREA conditions and is inconsistent with the national goals addressed by Congress in the enactment of FIRREA, and particularly § 1821(k). This is not the result intended by Congress nor the conclusion reached by this court.

IV. CONCLUSION

After careful analysis of § 1821(k), its legislative history and the public policy arguments advanced by all parties, the court finds that § 1821(k) creates a national, minimum standard of gross negligence in civil suits for monetary damages against officers and directors of federally insured depository institutions. This national standard preempts state law allowing suits for conduct not rising to the level of gross negligence or a greater disregard of a duty of care. Accordingly, defendants' motion to dismiss the complaint is granted. The court's ruling encompasses the first and second causes of action of the First Amended Complaint.

SO ORDERED.