The **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Oak Park Bank, formerly known as Oak Park Heights State Bank, Plaintiff,**

v.

Norvin L. **SWAGER, Norris M. SWAGER, Daniel R. Mortenson, Leonard E. Lindquist, David C. Lindquist, Walter L. Bush, Jr., Maria Nolte Field, David A. Brooks, Abraham C. Abbariao, Albert J. Hofstede and Robert H. Paradise, Defendants.**

Civ. No. 3–91–283.

United States District Court,
D. Minnesota,
Third Division.

Sept. 19, 1991.

Wayne G. Popham and Katherine C. Bloomquist, Popham, Haik, Snobrich & Kaufman, Minneapolis, Minn., and Jeffrey A. Hassan and James H. Clark, Hassan & Reed, Golden Valley, Minn., for plaintiff Federal Deposit Ins. Corp.

Louis W. Brenner and Michael J. Orme, Brenner Law Firm, Minneapolis, Minn., for defendant Abraham C. Abbariao.

Timothy D. Kelly and Andrea L. Sahlin, Kelly & Berens, Minneapolis, Minn., for defendant Walter L. Bush, Jr.

Samuel L. Hanson, Richard G. Mark, Janel E. LaBoda and Brian W. Parker, Briggs and Morgan, Minneapolis, Minn., for defendants Leonard E. Lindquist and David C. Lindquist.

John A. Cotter and Alan L. Kildow, Larkin, Hoffman, Daly & Lindgren, Minneapolis, Minn., for defendants Norris M. Swager and Norvin L. Swager.

## MEMORANDUM OPINION AND ORDER

DEVITT, District Judge.

### Introduction

Plaintiff Federal Deposit Insurance Corporation (FDIC) commenced this action in its capacity as receiver of the Oak Park Bank of Stillwater, Minnesota against former directors of the bank seeking to recover $2.4 million in damages allegedly caused by defendants' mismanagement. The FDIC's complaint contains breach of fiduciary duty (count I), gross negligence in the performance of duties (count II), and unjust enrichment (count III) claims.

The cause is before the court upon various motions brought by several defendants. Defendants Norvin L. Swager, Norris M. Swager, Leonard E. Lindquist, David C. Lindquist, Walter L. Bush, and Abraham C. Abbariao move the court to dismiss counts I and III of the complaint contending that 12 U.S.C. § 1821(k) (§ 1821(k)) preempts breach of fiduciary duty and unjust enrichment claims brought under Minnesota law. Subsequent to the filing of

defendant's motions, the FDIC consented to withdraw count III.[1] Thus, the court only need consider whether § 1821(k) preempts count I. The same defendants move to dismiss count II contending that the facts set forth in the complaint fail to state a claim of gross negligence under Minnesota law. Finally, several defendants move for a more definite statement and defendant Leonard E. Lindquist challenges the service of process. The court heard oral argument upon defendants' motions Monday, September 16, 1991.

For the reasons set forth below, the court will grant defendants' motions to dismiss count I of the complaint. The court will deny defendants' motions to dismiss count II and for a more definite statement. Finally, the court will deny defendant Leonard E. Lindquist's motion to dismiss for defective service of process and/or defective process.

### Background

Minnesota's commerce commissioner closed the Oak Park Bank in late April, 1988 after determining the bank was insolvent and unable to meet the withdrawal demands of its depositors. Subsequently, the commissioner appointed the FDIC as sole receiver. In this capacity the FDIC became responsible for liquidating the bank's assets. The FDIC maintains that defendants caused the bank's downfall by disregarding insider loan abuse, mismanagement, and the massive misappropriation of funds by bank officers. The FDIC further contends that defendants failed to institute appropriate corrective measures.

### Discussion

#### A.

The court first analyzes whether § 1821(k) of the Financial Institutions Reform Recovery and Enforcement Act of 1989 (FIRREA) preempts count I of the complaint. As noted earlier, count I states a claim for breach of fiduciary duty under Minnesota law. Section 1821(k) provides:

> A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil

---

1. *See* Memorandum of the FDIC in Opposition to the Motions to Dismiss at 2.

action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution,

(2) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or

(3) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with the assistance provided under section 1823 of this title,

for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k).

Defendants argue that § 1821(k) permits the FDIC to file civil actions against directors and officers of institutions for damages only if the conduct alleged by the FDIC meets or exceeds the "gross negligence" standard. According to defendants, the statute preempts actions based upon state law targeting less culpable conduct (e.g. simple negligence). Thus, defendants maintain that the FDIC may not sue for a breach of fiduciary duty because, under Minnesota law, a party may establish a prima facie case of breach of fiduciary duty without a showing of gross negligence.

The FDIC maintains in response that the plain language and legislative history of § 1821(k) indicate a Congressional intent to preempt only those state laws which shield bank directors and officers from liability for grossly negligent acts or other more blameworthy conduct. The FDIC interprets the final sentence of § 1821(k) to authorize simple negligence actions and other claims against bank directors and officers which may not rise to the level of gross negligence but which have, to this day, been available under state law.

Our Eighth Circuit Court of Appeals has yet to delimit the preemptive breadth of § 1821(k). In analyzing whether the section preempts the FDIC's cause of action for breach of fiduciary duty in this case, the court is mindful of " 'the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.' " *Mountain States Telephone and Telegraph Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985). "The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, ——, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990).

The parties agree that § 1821(k) authorizes the FDIC to sue bank directors where (1) the bank directors' conduct has caused the bank to suffer monetary damage, and (2) the damaging conduct satisfies the definition of "gross negligence" (as the term is defined according to applicable state law) or amounts to a more grievous transgression such as intentional tortious conduct. It seems clear that section 1821(k) preempts state law to the extent state law proscribes such actions. The court agrees with the parties' interpretation of the "plain language" of the statute to this point.

The FDIC and defendants part ways, however, with respect to the import of the final sentence of § 1821(k). Specifically, the parties disagree over the precise meaning of the language "other applicable law" contained within the final sentence. This language appears susceptible to two diametric interpretations. First, "other applicable law" could mean applicable law other than state law (i.e. federal law). Thus, § 1821(k) would not affect rights which the FDIC enjoys under other applicable federal law but would impair the FDIC's rights

under formerly applicable state law. Under this construction, § 1821(k) authorizes the FDIC to prosecute claims against directors and officers only for gross negligence or worse. Second, "other applicable law" could mean applicable law other than state law regarding gross negligence or a greater dereliction of a duty of care. Under this construction, § 1821(k) preempts only those state laws shielding directors from liability for gross negligence or worse.

Two published decisions of which the court is aware adopt the first position. In *Gaff v. Federal Deposit Insurance Corp.*, 919 F.2d 384 (6th Cir.1990), the court of appeals determined, albeit without extended discussion, that § 1821(k) "nationalize[d] the law of directors' and officers' liability when banks are taken over by the FDIC." *Id.* at 391. The court stated: "Congress has clearly indicated that the liability of officers and directors of a bank are [sic] determined under federal law." *Id.* The FDIC characterizes the court of appeals' discussion concerning § 1821(k) as dicta. However, the court's conclusion respecting § 1821(k) contributed meaningfully to the disposition of the issues before it and, therefore, may not be dismissed as mere verbosity.

In *Federal Deposit Insurance Corp. v. Canfield, et al.*, 763 F.Supp. 533 (D.Utah 1991), the district court concluded that "other applicable law" means other sections of FIRREA. *Id.* at 537. First, the court found significant that other provisions within FIRREA, including § 1821(k), refer specifically to "state law" when such reference is intended. *Id.* at 536. Second, the court recognized that, if adopted, the FDIC's interpretation of § 1821(k) would broaden the FDIC's enforcement powers. *Id.* at 537. The court reasoned that § 1821(k) was not intended to broaden the FDIC's powers, but to impair them:

> the last sentence provides, "[n]othing in this paragraph shall impair or affect any right of the Corporation under *other applicable law*."

plicable law." * * * If nothing in the paragraph impairs or affects any right of the Corporation under *other* applicable law, § 1821(k) must be the applicable law which does impair the rights of the Corporation. The phrase "other applicable law" has no meaning unless, as urged by defendants, there is some applicable law under which the rights of the FDIC are impaired. This court believes Congress intended § 1821(k) to be that impairing legislation.

*Id.* (emphasis in original). The court analyzed the legislative history surrounding the formation and passage of § 1821(k) and concluded that the history failed to express a clear intent. *Id.* at 536.

Two decisions of which the court is aware adopt the second construction noted earlier and presently urged by the FDIC: *Federal Deposit Insurance Corp. v. McSweeney, et al.*, 772 F.Supp. 1154 (S.D.Cal.1991) and *Federal Deposit Insurance Corp. v. Haddad, et al.*, No. 90–0779–CIV, slip op. at 13–16 (S.D.Fla. November 28, 1990).[2] The district court in *McSweeney* construed the first sentence of § 1821(k) to be "nonexclusive." *McSweeney*, 772 F.Supp. at 1158. The court reasoned:

> Reading the first sentence plainly—as nonexclusive—the second sentence follows logically; not withstanding the permissive authority granted in the first sentence, it is not intended to bar the FDIC's use of "other applicable law." If the first sentence were presumed exclusive, the second sentence would become mere surplusage which would contravene "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative."

*Id.* (citation omitted). The court also found significant that 12 U.S.C. § 1821(d)(2)(A)(i) entitles the FDIC to enjoy all the rights and powers of any stockholder. The court concluded that, since stockholders may prosecute claims against directors and offi-

---

2. In *Haddad,* a United States Magistrate Judge issued a report and recommendation concluding that § 1821(k) did not preempt common law simple negligence claims. The written opinion does not address the principal arguments raised by defendants in this proceeding. The court does not find *Haddad* to be of assistance in resolving the pending motion.

cers based upon less than gross negligence, Congress intended FIRREA to provide the FDIC access to the entire "common law arsenal" available in any given state. *Id.* at 1159.

This court concludes, after reviewing the "plain language" of § 1821(k), the cases described above, and the pertinent legislative history, that § 1821(k) establishes a federal standard of liability for directors and officers of insured depository institutions and precludes the FDIC from maintaining actions against bank directors and officers based upon state law for conduct not amounting to gross negligence or a greater disregard of a duty of care. The court finds, and the parties appear to agree, that the preemptive breadth to be given § 1821(k) hinges upon construction of the second and final sentence in the section. The court construes the "other applicable law" referred to within the final sentence to mean applicable law other than state law.

The language of the section supports this conclusion. When examined in light of the reference to "applicable State law" at the close of the first sentence, logic suggests that Congress intended the phrase "other applicable law" to mean applicable law *other than* state law. The court is satisfied that, had Congress intended "other applicable law" to mean "applicable state law," Congress would have used those precise words just as it did at the close of the immediately preceding sentence. Additionally, § 1821(k) states that it does not "impair or affect" the FDIC's rights under "other" law, thereby suggesting strongly that Congress understood the section to impair or limit the FDIC's rights. As noted in *Canfield,* the reference to "other applicable law" appears sensible only if

§ 1821(k) in fact impairs the FDIC's rights under some law. Had Congress intended that § 1821(k) strengthen or broaden the FDIC's power to recover damages from insolvent bank directors and officers the final sentence should have read simply: "Nothing in this paragraph shall impair or affect any right of the Corporation under *any* applicable law." [3] The court thus finds the FDIC's construction at odds with the "plain language" of the section because it would, if accepted, broaden the FDIC's enforcement powers. [4]

The parties have detailed thoroughly the legislative history underlying the debate and ultimate passage of § 1821(k). The court has reviewed thoroughly this history and is satisfied that it does not evidence a clearly expressed legislative intent contrary to the court's construction of the statute. Indeed, the most pertinent portion of the legislative history lends support to the court's interpretation. The report of the Conference Committee, in which the last sentence of the section was added and finalized, reads as follows:

> Title II preempts state law with respect to claims brought by the FDIC in any capcity [sic] against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct.

H.R.Conf.Rep. No. 101–222, 101st Cong., 1st Sess. 393, 398 (1989), *reprinted in* 1989 U.S.Code Cong. and Admin.News 86, 432, 437; *see also Gaff,* 919 F.2d 384, 391; *Canfield,* 763 F.Supp. at 538–39 (concluding that legislative history fails to express a clear intention). [5] The court will grant de-

---

**3.** The court recognizes that its position with respect to the phrase "impairs or affects" assumes that "affects" is, to a large extent, synonymous with "impairs." At the very least, the court construes the word "affects" as used in § 1821(k) to imply some limitation upon the FDIC's enforcement power as opposed to an extension of it. The court considers this the more likely intention of Congress.

**4.** The court is cognizant that 12 U.S.C. § 1821(d)(2)(A)(i) vests in the FDIC all rights of

a shareholder and that shareholders may possess common law rights for claims based upon less than grossly negligent conduct. Under the court's holding, the FDIC would not be able to prosecute simple negligence claims against directors or officers of a failed bank. The court is convinced that the language of § 1821(k) requires this result.

**5.** In *McSweeney,* the district court relied upon a report in the Congressional Record dated April 19, 1989 to conclude that Congress did not in-

fendants' motions to dismiss count I.[6]

### B.

The court addresses defendants' motions to dismiss count II of the complaint and for a more definite statement concurrently. Certain defendants maintain that the facts pled in the complaint do not rise to the level of gross negligence as that cause of action is defined under Minnesota law and that the complaint is impermissibly vague. For purposes of defendants' motions to dismiss the court must assume the truthfulness of the allegations set forth in the complaint. *United States v. Advance Machine Co.,* 547 F.Supp. 1085, 1088 (D.Minn.1982). The court has reviewed the complaint and state law relative to claims of gross negligence and is satisfied that the factual allegations of the complaint establish a prima facie case of gross negligence. The court is further satisfied that the complaint provides defendants adequate notice of the nature of and grounds supporting the claims against them. The court will deny defendants' motions to dismiss count II and for a more definite statement.

### C.

█ Defendant Leonard E. Lindquist (Lindquist) maintains that he has yet to be served properly with a copy of the summons and complaint in this action and moves the court to dismiss the complaint as against him for insufficiency of process and/or insufficiency of service of process. The FDIC attempted service upon Lindquist three times. First, a copy of the complaint was mailed to Lindquist, but no summons was attached. Lindquist did not acknowledge receipt of service. Second, service was attempted at Lindquist's former residence. Finally, Lindquist was personally served with a summons and complaint. The caption on the summons identified the names of the parties as follows:

THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR OAK PARK BANK, FORMERLY KNOWN AS OAK PARK HEIGHTS STATE BANK, Plaintiff,

v.

NORVIN L. SWAGER, et al., Defendants.

The summons identified mistakenly the name and address of defendant as "Norvin L. Swager."

Rule 4(b) of the Federal Rules of Civil Procedure provides, in pertinent part:

The summons shall be signed by the clerk, be under the seal of the court, contain the name of the court and the names of the parties, [and] be directed to the defendant ...

"Rule 4 is a flexible rule which is liberally construed to uphold service as long as defendant receives sufficient notice of the complaint." *Crane v. Battelle,* 127 F.R.D. 174, 177 (S.D.Cal.1989) (citing *United Food and Commercial Workers Union, Locals 197, et al. v. Alpha Beta Co.,* 736 F.2d 1371, 1382 (9th Cir.1984)). Technical defects contained within a summons do not justify dismissal unless a party is able to demonstrate actual prejudice. *Id.; Cf. Minnesota Mining & Manufacturing Co. v. Kirkevold,* 87 F.R.D. 317, 323 (D.Minn. 1980) (in situations where defendant receives prompt actual notice of pendency of action, rules governing service should be liberally construed to uphold service).

The court concludes, based upon the record presently before it, that Lindquist has failed to demonstrate actual prejudice resulting to a substantial right arising

---

tend to "prejudic[e] the FDIC's full range of rights in those states that had not passed protective legislation for directors." *Id.* at 1158. However, the final sentence of § 1821(k) was not added to the section until the legislation reached Conference Committee in the summer of 1989. *See Zajac v. Federal Land Bank of St. Paul,* 909 F.2d 1181, 1182 (8th Cir.1990) (conference committee report the most persuasive evidence of Congressional intent next to statute itself). The court concludes that *McSweeney's* reliance upon the April 19 report is misplaced.

**6.** Only six of the eleven defendants in this case filed motions to dismiss count I. However, the court's construction of § 1821(k) mandates dismissal as to all defendants. Rather than require each of the non-moving defendants to move independently for dismissal of count I, the court will order count I dismissed as to all defendants at this time.

**1250**

from the imperfect summons. The court will, therefore, deny defendant Lindquist's motion to dismiss.

## ORDER

Based upon the foregoing, and all the files, briefs, and arguments of counsel,

IT IS ORDERED that:

1. Count I of the complaint alleging breach of fiduciary duty is DISMISSED as to all defendants;

2. Defendants Leonard E. Lindquist, David C. Lindquist, Walter L. Bush, and Abraham C. Abbariao's motions for a more definite statement are DENIED;

3. Defendants Leonard E. Lindquist, David C. Lindquist, Norvin L. Swager, Norris M. Swager, Walter L. Bush, and Abraham C. Abbariao's motions to dismiss count II of the complaint are DENIED;

4. Defendant Leonard E. Lindquist's motion to dismiss for insufficiency of service of process and/or insufficiency of process is DENIED.