**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Galen R. NIHISER, Robert M. Rich, Jr., Gregory York, Defendants.**

**No. 91–CV–2475.**

United States District Court, C.D. Illinois.

Feb. 27, 1992.

Cheryl Ragel Stickel, Mohan Alewelt Prillaman & Adami, Springfield, Ill., Wendi Sloane Weitman, W. Scott Porterfield, Barack Ferrazzano Kirschbaum & Perlman, Chicago, Ill., and Jody Silverman, Sr. Atty., F.D.I.C., Rosemont, Ill., for plaintiff.

Peter C. Alexander, Alexander Law Offices, Savoy, Ill., Henry C. Szesny, Robert F. Ward, Pope Ballard Shepard & Fowle Ltd., Chicago, Ill., Harold F. Tenney, Carl

J. Tenney, Decatur, Ill., C.W. Dukes, and John F. Martin, Dukes Martin Helm & Ryan, Ltd., Danville, Ill., for defendants.

## ORDER

BAKER, District Judge.

The Federal Deposit Insurance Corporation (FDIC) brought this action as the receiver of Mt. Zion State Bank (Mt. Zion) against three former officers and directors of Mt. Zion. The FDIC took control of the bank on November 4, 1988. The FDIC claims that the defendants engaged in unsound loan practices causing the bank to suffer substantial losses and impairment of its assets totalling at least $1,089,100.00. In the three count complaint, the FDIC seeks to recover the losses from the defendants based on the defendants' breach of fiduciary duties, negligence, and gross negligence.

The specific allegations of the complaint relate to the defendants, involvement in Mt. Zion's lending relationship with Brown/Knox and Associates (Brown/Knox). Brown/Knox is a Decatur, Illinois investment firm which sold tax shelters. Many of the investors in the Brown/Knox shelters signed promissory notes for loans from Mt. Zion and used that money to purchase the property which became the basis for the tax shelters. Mt. Zion made eighteen loans to Brown/Knox investors. The complaint details numerous problems with these loans which allegedly caused the substantial losses mentioned above. The problems include: extension of credit to borrowers residing outside Mt. Zion's trade area, failure to provide independent appraisals on the property, use of liberal repayment terms in comparison to the age and condition of the property, and failure to obtain adequate financial information on the borrowers. According to the complaint, the defendants were the loan officers responsible for the Brown/Knox loans and were the primary contact persons at different points in time for the Brown/Knox group of loans.

Gregory York has moved to dismiss counts one and two of the complaint for breach of fiduciary duty and negligence.

(docket # 4) The FDIC has responded to the motion. (docket # 8) Robert M. Rich, Jr. moved to extend the time to answer the complaint until after the court ruled on York's motion to dismiss counts one and two. (docket # 11) Magistrate Judge Kauffman granted Rich's motion. Galen R. Nihiser also requested an extension of time to answer. (docket # 13) At a hearing on the motions on February 20, 1992, the court denied the motion to dismiss. The court also granted Nihiser's motion for an extension of time and ordered all three of the defendants to answer the complaint within fourteen (14) days of the hearing.

### Motion to Dismiss

■ York moves to dismiss the claims for breach of fiduciary duty and negligence for failure to state a claim based on the Financial Institution's Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821. According to York, this statute creates an exclusive remedy against officers and directors of failed institutions: the FDIC can hold officers and directors liable for conduct amounting to gross negligence. 12 U.S.C. § 1821(k) (1989) Under this statute, therefore, the FDIC cannot maintain actions against officers and directors which arise under federal or state common law, such as claims for negligence or breach of fiduciary duty. Section 1821(k) states:

Liability of directors and officers. A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the corporation—

(1) acting as a conservator or receiver of such institution,

(2) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or

(3) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution

or its affiliate in connection with assistance provided under section 1823 of this title, for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k). The clear language of this act, the defendant argues, bars director and officer liability based on a lesser standard of care than gross negligence.

As support for this argument, the defendant cites two district court cases. In *FDIC v. Canfield*, the defendants, former directors and officers of a failed bank, sought to dismiss the counts which were based on conduct amounting to less than gross negligence. 763 F.Supp. 533, 534 (D.C.Utah 1991). The defendants argued that section 1821(k) established a federal standard of gross negligence or a higher degree of culpability for directors' and officers' liability. *Id.* at 535. The *Canfield* defendants also asserted that Congress implemented public policy supporting their position by balancing "the government's need to recover money damages for conduct amounting to aggravated fault on the part of directors and officers with the need to insure that competent and qualified people serve on bank and thrift boards." *Id.*

The *Canfield* court agreed with the defendants that, based on the first sentence of section 1821(k), Congress clearly intended to create a uniform federal standard of gross negligence. *Id.* at 536; *see Gaff v. FDIC*, 919 F.2d 384, 387 (6th Cir.1990). According to the court, reading the last sentence of section 1821(k) to allow varying state standards of liability below gross negligence would require the court to ignore the plain meaning of the statute. *Canfield*, 763 F.Supp. at 536. Where Congress wanted to refer to state law, as in the first sentence, the statute explicitly mentions state law. *Id.* The court declined to infer the incorporation of state law and interpret the words "other applica-

ble law" as undermining the uniform federal standard of gross negligence. *Id.* at 537. Instead, the court found that "other applicable law" refers to other provisions of FIRREA which create different standards of liability in FDIC actions. *Id.; see also FDIC v. Brown*, No. NC89-300, slip. op. at 1–2 (D.Utah Nov. 19, 1991) (granting motion to dismiss based on *Canfield*). The *Canfield* court, without citing any support for its analysis, also held that the defendant's interpretation of section 1821(k) best serves public policy. 763 F.Supp. at 540.

The defendants also cite *FDIC v. Swager*, 773 F.Supp. 1244 (D.C.Minn.1991). In *Swager*, the court dismissed a count alleging breach of fiduciary duty under Minnesota law. 773 F.Supp. at 1245. The court, like the *Canfield* court, believed that section 1821(k) created a federal standard of liability which precludes actions for conduct amounting to less than gross negligence. *Id.* at 1248. Unlike the *Canfield* court, however, the court held that section 1821(k) preempted all state law actions and not federal law actions.

> When examined in light of the reference to "applicable State law" at the close of the first sentence, logic suggests that Congress intended the phrase "other applicable" law to mean applicable law *other than* state law. The court is satisfied that, had Congress intended "other applicable law" to mean "applicable state law," Congress would have used those precise words just as it did at the close of the immediately preceding sentence.

*Id.* In addition, the court found that the statute's statement that section 1821(k) does not "impair or affect" the FDIC's rights under other applicable law indicates that Congress intended to impair the FDIC's rights with section 1821(k). *Id.* Therefore, the court reasoned, it could not read section 1821(k) to broaden the FDIC's rights against directors and officers.

The FDIC argues, based on the plain meaning and legislative history of section 1821(k) and on settled rules of statutory construction, that federal and state common law causes of action against officers

and directors are preserved. The FDIC asserts that the first sentence of section 1821(k), stating that officers and directors "may be held liable ... for gross negligence," does not create an exclusive remedy. Instead, this sentence simply preempts state laws seeking to shield officers and directors from any liability. The sentence insures that the FDIC, at least, can hold directors and officers liable for gross negligence. The second sentence of section 1821(k) is a savings clause which follows from the first sentence and allows the FDIC to pursue all other remedies, including state common law negligence actions.

Several courts have considered the preemptive effect of section 1821(k). The majority of these courts agreed with the FDIC's analysis and found that the section does not preempt federal and state common law causes of action. *FDIC v. Black*, 777 F.Supp. 919 (W.D.Okla.1991); *FDIC v. McSweeney*, 772 F.Supp. 1154 (S.D.Calif.1991); *FDIC v. Burrell*, 779 F.Supp. 998 (S.D.Iowa 1991); *FDIC v. Baker*, No. 89–386, 1991 U.S. Dist. LEXIS 16878 (C.D.Calif. June 24, 1991); *FDIC v. Hubbard*, 779 F.Supp. 66 (S.D.Tex.1991); *FDIC v. Castetter*, No. CV 90–1373 H(M), slip. op. (S.D.Calif. Nov. 29, 1991); *FDIC v. Williams*, 779 F.Supp. 63 (N.D.Tex.1991). Two courts took a middle ground, finding that section 1821(k) precluded federal common law causes of action but not state common law actions. *FDIC v. Miller*, 781 F.Supp. 1271 (N.D.Ill.1991); *FDIC v. Isham*, 777 F.Supp. 828, 832 (D.Colo.1991). Only three courts adopted York's argument. *Brown*, No. NC89–300, slip. op. (D.Utah Nov. 19, 1991); *Swager*, 773 F.Supp. 1244; *Canfield*, 763 F.Supp. 533.

■ In interpreting a statutory section such as section 1821(k), the plain meaning of the statute controls. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)) (plain language controls absent clearly expressed legislative intention to the contrary). The

*McSweeney* court, reading the plain language of the statute, found that the first sentence of section 1821(k) did not indicate that the section provided an exclusive remedy. 772 F.Supp. at 1158. Because the first sentence is nonexclusive, the use of "other applicable law" in the second sentence must allow the FDIC to pursue an action under state or federal laws which provide for a lesser standard of fault. *Id.;* *Black*, 777 F.Supp. at 921–22.

■ The court concurs with the *McSweeney* and *Black* analysis of the language of section 1821(k). The permissive language of the first sentence and the broad language of the savings clause clearly evidence the intent to preserve the FDIC's rights under other laws, including state and federal common law. *See Miller*, 781 F.Supp. at 1276 ("it is clear to the court that the broad language of the savings clause was intended to preserve state law rights"). Under the defendant's interpretation, section 1821(k) would prevent the FDIC from asserting state and federal common law causes of action. The court will not find that section 1821(k) preempts or repeals common law rights unless the language of the statute demonstrates clearly and explicitly that this is its purpose. *Norfolk Redev. and Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 35, 104 S.Ct. 304, 307, 78 L.Ed.2d 29 (1983). Section 1821(k) does not indicate an intent to limit the FDIC's remedies to FIRREA or to federal law alone. *See Black*, 777 F.Supp. at 922 (if "other applicable laws" referred to federal law or only to FIRREA, statute should have stated "federal law" or "under this Act").

The defendant's reasoning would create a different standard for directors and officers of failed institutions than for managers of viable institutions. *See McSweeney*, 772 F.Supp. at 1159. Once a bank failed, the FDIC could hold the directors and officers liable only for gross negligence. Whereas, in many states, directors and officers can be held liable for conduct amounting to simple negligence while an institution remains open. At the hearing, the defendant argued that Congress intend-

ed this result. Congress, for reasons of economic efficiency, chose to allocate resources to recover for gross negligence and not simple negligence. Not surprisingly, the defendant's only support for this assertion is the court's discussion of public policy in *Canfield*, 763 F.Supp. at 540. The court is not persuaded by the defendant's argument.

A court must construe a statute to effectuate its purposes. *Dole v. United Steelworkers*, 494 U.S. 26, 35, 110 S.Ct. 929, 934, 108 L.Ed.2d 23 (1990); *Isham*, 777 F.Supp. at 831. The purpose of FIRREA was to strengthen the FDIC's enforcement powers against the managers of failed thrifts. *McSweeney*, 772 F.Supp. at 1159; *Isham*, 777 F.Supp. at 831. It would distort FIRREA's purpose to interpret it as making it more difficult for the FDIC to recover from negligent directors and officers. Based on the plain language and purpose of section 1821(k), the defendant's motion to dismiss counts one and two is denied.

IT IS THEREFORE ORDERED that Gregory York's motion to dismiss counts one and two (docket # 4) is DENIED.

IT IS FURTHER ORDERED that Galen Nihiser's motion for an extension of time (docket # 13) is GRANTED. All three defendant's are ordered to answer the complaint by March 5, 1992.