**FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the FSLIC Resolution Fund, Plaintiff,**

v.

**Loren A. MINTZ; Stanley Margulies; Jacques Francoeur and Ronald Wilson, Defendants.**

No. 92–6779–CIV.

United States District Court, S.D. Florida.

March 2, 1993.

Robyn C. Mitchell, Adorno & Zeder, Miami, FL, Mark Miller, John Hartness, FDIC (of counsel), Atlanta, GA, for plaintiff.

Frank Walker, Stuart & Walker, Fort Lauderdale, FL, David Pollack, Strook Strook & Lavan, Miami, FL, for defendants.

Loren Mintz, pro se.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon the defendants' motions to dismiss complaint. The FDIC has responded to the motions in a consolidated pleading and the defendants have replied in a timely fashion. The motion is now ripe for disposition. Though the defendants have moved to dismiss in separate pleadings, the subject matter of the motions is the same and will be treated accordingly.

The FDIC filed this action against the defendants who are former officers and directors of Cypress Savings Association. The suit seeks to recover damages for breach of fiduciary duty (Count I), simple negligence (Count II), gross negligence (Count III), and breach of contract (Count IV). The defendants have moved to dismiss all counts of the complaint.

The underlying theory of the motions to dismiss Counts I, II, and IV is that the claims are based on a lesser standard than the "gross negligence" standard found in 12 U.S.C. § 1821(k). The FDIC asserts that it is entitled to sue under the federal statutory gross negligence standard, the federal common law simple negligence standard or the state common law simple negligence standard. In essence, the FDIC claims that it may sue under whatever standard is most beneficial to the FDIC. Not surprisingly, the defendants disagree. They make the simple but elegant argument that 12 U.S.C.

§ 1821(k) means exactly what it says—that officers and directors "may be held personally liable for monetary damages in any civil action ... for *gross negligence.*" (emphasis added.)

The motions to dismiss require an analysis of § 1821 and the preemption effect, if any, on state law and federal common law regarding liability of corporate directors and officers. On its face, the FDIC's argument seems convoluted—they argue that § 1821 clearly preempts all state law "insulating" statutes (which afford greater protection to officers and directors) but does *not* preempt *any* state common law or statutory law which allows liability for simple negligence. In addition, notwithstanding the seemingly clear language of § 1821(k), the FDIC also argues that federal common law (arguably allowing liability for simple negligence) is not preempted. The purposes behind FIRREA must be · scrutinized to determine the preemptive effect of § 1821(k).

The FDIC's response to the motions to dismiss is nothing if not thorough. The defendants perhaps put it best when their reply stated that the

> FDIC has responded to defendants' short, plain motions to dismiss with a 43 page magnum opus of stupefying density and detail. FDIC cites 120 cases and a slew of other sources, including legislative history, learned treatises, and Webster's unabridged dictionary (1986 edition), and peppers its memorandum with footnotes so plentiful and so long that they would make the editors of the Harvard Law Review proud.

Indeed, the FDIC has supplied the court with seemingly every authority, including the most recent unreported cases on this issue, necessary for an informed decision. While the court will not comment on every assertion in the FDIC's response regarding FIRREA, a brief review of preemption and statutory interpretation should be helpful to this inquiry.

1. For a more comprehensive list of citations in accord, see *FDIC v. Nihiser,* 799 F.Supp. 904

### STATUTORY CONSTRUCTION AND PREEMPTION

The court notes from the outset that many courts have wrestled with the very proposition facing this court today. Given the unclear wording of FIRREA, it·is not surprising that the decisions vary. Many and perhaps the majority of courts have found that § 1821(k) does not preempt either federal or state law. *FDIC v. Black,* 777 F.Supp. 919 (W.D.Okla.1991); *FDIC v. McSweeney,* 772 F.Supp. 1154 (S.D.Cal.1991), *aff'd,* 976 F.2d 532 (9th Cir.1992).[1] Other courts have held that FIRREA (specifically § 1821(k)) preempts both federal and state law on the standard of liability. *FDIC v. Swager,* .773 F.Supp. 1244 (D.C.Minn.1991); *FDIC v. Canfield,* 763 F.Supp. 533 (D.C.Utah 1991), *rev'd,* 967 F.2d 443 (10th Cir.1992). Some courts have ruled that the statute preempts federal common law but not state common or statutory law. *FDIC v. Miller,* 781 F.Supp. 1271 (N.D.Ill.1991); *FDIC v. Isham,* 777 F.Supp. 828 (D.Colo.1991). This "middle ground" approach was also the implicit holding of *FDIC v. Canfield,* 967 F.2d 443 (10th Cir.1992), which relied on state law and not federal common law in allowing the FDIC to proceed on a negligence standard.

The FDIC's response includes sections on the meaning of the word "may," the legislative history of FIRREA, the "plain meaning" of the statute, the goal of national uniformity, and "other well settled rules of statutory construction."

The Court will resist the temptation, at least as much as possible, of relying on a particular axiom of statutory interpretation to justify its decision. This is not to say that there are no helpful principles in construing a statute—the court simply notes that one can find a "principle" to mandate a particular desired result. As stated by the dissent in *Canfield,*

> Few are so naive as to believe there exists but a single correct interpretation of any given statute. Those who are intellectually honest admit the real question· is: Which "correct" interpretation will the

(C.D.Ill.1992).

court adopt, and why?[1] *Canfield*, 967 F.2d at 449.

In footnote one, the court further commented:

> For nearly every canon of statutory construction, there exists an opposing canon which supports a contrary interpretation.[2] *Id.*

A review of the cases cited above reveals that Judge Brorby's dissent is well taken. A multitude of courts, relying on their chosen tenets of statutory construction, find that neither state nor federal law is preempted by § 1821(k). In this court's view, such a determination renders the "gross negligence" portion of the statute meaningless.

### THE STATUTE

12 U.S.C. § 1821(k) provides in pertinent part:

> A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by ... the Corporation ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State Law. Nothing in this paragraph shall impair or affect any right of the corporation under other applicable law.

Based on the pleadings filed in this case and the disagreement in the case law on this issue, the meaning of the above statute is far from clear. The majority of courts seem to have placed great emphasis on the "savings clause" of the statute, finding that no other law (state or federal) has been preempted. While such an interpretation is supportable, that result may be attributed to losing "sight of the forest but for a single tree." (*Canfield*, 967 F.2d at 449).

### FEDERAL COMMON LAW

The FDIC asserts that the federal common law standard of liability is simple negligence. *FDIC v. Berry*, 659 F.Supp. 1475 (E.D.Tenn.1987). Further, the FDIC maintains that it may bring suits against officers and directors under the federal common law, notwithstanding the clear language of "gross negligence" found in the statute. This court disagrees.

The FDIC argues that § 1821(k) should be read to harmonize all of its parts because statutes should be construed to avoid inconsistencies among its parts. *Louisiana Public Service Commission v. FCC*, 476 U.S. 355, 370, 106 S.Ct. 1890, 1895, 90 L.Ed.2d 369 (1986). The FDIC's construction, however, not only makes the various parts of the statute inconsistent, it renders meaningless the gross negligence standard set out in the statute by Congress.

█ The court finds that the federal common law standard of simple negligence is preempted by § 1821(k). While conceding that reasonable minds may differ as to the construction of the statute, the finding that federal common law is preempted is required. A reading of the savings clause to include federal common law makes the rest of the statute a nullity. Why would Congress need to pass § 1821(k) if the FDIC already had the ability to defeat state laws with the federal common law of simple negligence? If Congress intended for the federal standard to be the common law simple negligence threshold, then such could have been codified. Instead, Congress chose to enact the gross negligence threshold as the federal standard.

█ The above finding is supported by *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 316, 101 S.Ct. 1784, 1792, 68 L.Ed.2d 114 (1981). The analysis of whether a statute preempts an issue previously covered by federal common law is different than the preemption inquiry when state law is involved. *Id.* The requirement of Congress' "clear and manifest purpose" to preempt is not necessary, and the inquiry begins with the assumption that "it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *City of Milwaukee*, 451 U.S. at 317,

---

**2.** See Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision or Canons about How Statutes are to be Construed*, 3 Vand.L.Rev. 395 (1950), *reprinted in* 3A N. Singer, *Sutherland Statutory Construction*, 203, 206–09 (4th Ed. 1986).

101 S.Ct. at 1792. Here, Congress has clearly set a standard of gross negligence or above. Accordingly, the court finds that federal common law is preempted and is not included in the "other applicable law" language found in the savings clause. Any other interpretation of the savings clause eviscerates the "gross negligence" standard completely. The court refuses to interpret the savings clause in a way which destroys the meaning of the rest of the statute. *FDIC v. Miller*, 781 F.Supp. 1271, 1275–76 (N.D.Ill. 1991).

### PREEMPTION OF STATE LAW

■ The issue of preemption of state law requires a different analysis. As to this question, there exists an assumption that state law is only superseded by federal law when such is "the clear and manifest purpose of Congress." *City of Milwaukee*, 451 U.S. at 316, 101 S.Ct. at 1792. This analysis is usually assisted by a statute's legislative history. Unfortunately (although predictably), FIRREA's legislative history is less than illuminating.

The FDIC asserts that the legislative history indicates Congress' intention to preempt only the "insulating statutes" passed by many states which protect officers and directors from liability. Thus, they contend, state laws allowing liability for simple negligence were never intended to be affected by § 1821(k). The plaintiff's response quotes the Senate floor managers, who explained:

> State law would be preempted only to the extent that it forbids the FDIC to bring suit based on "gross negligence" or an "intentional tort." In determining whether or not conduct constitutes "gross negligence" or an "intentional tort," applicable State law is to govern. This amendment would thus allow the FDIC to sue a director or officer guilty of gross negligence or willful misconduct, even if State law did not allow it.

FDIC's Response at 14, *citing*, 135 Cong. Rec. S4278–79 (April 19, 1989).

The FDIC ignores, however, other legislative history which stands for the opposite proposition, namely that the § 1821(k) preempts state law and makes the "gross negligence" standard a uniform national standard. As noted by the dissent in *Can-*

*field*, FIRREA's legislative history also states:

> Title II [section 1821(k) ] preempts State law with respect to claims brought by the FDIC in any capacity against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct.

*Canfield*, 967 F.2d at 451, n. 8, *citing*, H.Rep. No. 101–222, 101st Cong., 1st Sess. 393, 398 (1989), *reprinted in* 1989 U.S.C.C.A.N. 432, 437.

The above language is persuasive for defendants' contention that the § 1821(k) preempts all state law, which would result in the application of the gross negligence standard in all cases.

■ As demonstrated above, the legislative history is contradictory and certainly not dispositive. Thus, the court must do what seems most reasonable. A finding that lesser state law standards are preempted would be tantamount to ignoring the savings clause and giving it almost no substantive meaning. "Other applicable law" is generally understood to mean all other applicable law. *Canfield*, 967 F.2d at 446–47; *But see, FDIC v. Swager*, 773 F.Supp. 1244 (D.Minn.1991). If Congress had intended to set a uniform national standard in § 1821(k), it certainly could have done so more clearly. Accordingly, the court is satisfied that state laws with lesser liability standards are not preempted by § 1821(k).

This reading of the statute (that federal law is preempted but state law is not) can be characterized as "splitting the baby." Nonetheless, this construction gives all of the provisions in the section meaning, "so that no part will be inoperative or superfluous." *Canfield*, 967 F.2d at 447 (citations omitted). Pursuant to the above discussion, the FDIC may sue under Florida law if suits in simple negligence are permitted.

### FLORIDA STATUTORY LAW

Perhaps the only point agreed on by all parties is that Florida has passed an "insulat-

ing" statute which was intended to afford greater protection against suit for directors and officers. Fla.Stat. § 607.0831 (preceded by § 607.1645). It states in pertinent part:

A director is not personally liable for monetary damages to the corporation or any other person for any statement, vote, decision, or failure to act, regarding corporate management or policy, by a director, unless:

(a) The director breached or failed to perform his duties as a director: and

(b) The director's breach of, or failure to perform, those duties constitutes:

1. A violation of the criminal law ...;

2. A transaction from which the director derived an improper personal benefit ...;

...

4. [C]onscious disregard for the best interest of the corporation or willful misconduct ...;

5. [R]ecklessness or an act or omission which was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and wilful disregard of human rights, safety, or property.

These heightened liability standards were previously codified in section 607.1645 which was effective as of 1987. Accordingly, and the only "easy" finding for the court to make, is that Florida statutory law does not allow suits for simple negligence after 1987. As to the common law in Florida and what standard of liability prevailed prior to 1987, the parties disagree.

### FLORIDA COMMON LAW

The defendants cite *Orlando Orange Groves v. Hale*, 119 Fla. 159, 161 So. 284, 288 (1935), for the proposition that the common law standard of liability for officers and directors is gross negligence ("gross misjudgment"). The plaintiff cites *FDIC v. Haddad*, 778 F.Supp. 1559 (S.D.Fla.1991), for the opposite proposition. A review of relevant case law and commentary reveals that language of both negligence and gross negligence is used in Florida cases. *Skinner v. Hulsey*, 103 Fla. 713, 138 So. 769 (1931); *Flight Equipment and Engineering Corporation v. Shelton*, 103 So.2d 615 (Fla.1958); Riah R. Seuradge, *Personal Liability of Directors in Florida: Whose Corporation is it Anyway?*, 15 Nova L.Rev. 1389 (1991).

The court in *Haddad*, with limited discussion, found that there is a cause of action against corporate directors for simple negligence. *Haddad*, 778 F.Supp. at 1567. This court disagrees. As defendants assert, the court in *Haddad* did not analyze the effects of the business judgment rule on a claim sounding in negligence.

The business judgment rule becomes essential to this inquiry because, in essence, it raises the standard of liability from simple to gross negligence. Although directors must act with diligence and due care (seemingly setting out a simple negligence standard), they are only liable when they "act fraudulently, illegally, or oppressively, or in bad faith." *International Insurance Co. v. Johns*, 685 F.Supp. 1230, 1238 (S.D.Fla.1988), *aff'd*, 874 F.2d 1447 (11th Cir.1989). These terms indicate that liability will attach only to acts which constitute gross negligence and intentional conduct. Because courts will not substitute their judgment in place of a corporation's directors, the simple negligence of a director cannot be reviewed. Similarly, Delaware courts have defined the parameters of the business judgment rule protection by finding liability only for conduct constituting "gross negligence." *Smith v. Van Gorkom*, 488 A.2d. 858 (Del.1985). This is significant because "Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines." *International Insurance Co.*, 874 F.2d at 1459, n. 22 (citations omitted).

▮ The result of the application of the business judgment rule in Florida is that the standard of liability for corporate directors is "gross negligence." Thus, the FDIC is precluded from bringing the instant complaint sounding in simple negligence, as such is not permitted under the common law in Florida.

### BREACH OF CONTRACT

▮ The FDIC has alleged in Count IV of the complaint that defendants breached a contractual duty. The defendants are correct that plaintiff has simply realleged its tort claims in contract form. There exists no express contract, and the oath allegedly taken by the defendants does not create a contractual obligation. *FDIC v. Haddad*, 778

F.Supp. at 1565; *see also, FDIC v. McAtee,* No. 87–2459–O, 1988 WL 248044 (D.Kan. 1988). The plaintiff's citation of cases which recognize implied contracts, and its reference to cases from the turn of the century which allowed contract actions against officers and directors, are not persuasive. Moreover, the court disagrees that this action lies in contract, and chooses not to follow *FSLIC v. Burdette,* 696 F.Supp. 1196, 1201 (E.D.Tenn. 1988). Accordingly, the breach of contract claim in Count IV will be dismissed.

Without expressly deciding the issue, the court also notes that if plaintiff were able to maintain a breach of contract action, Florida's economic loss rule might prevent any recovery in tort. *AFM Corporation v. Southern Bell Telephone and Telegraph Co.,* 515 So.2d 180 (Fla.1987).

### *GROSS NEGLIGENCE*

 The defendants have also moved to dismiss Count III for gross negligence or in the alternative have moved for a more definite statement. The court recognizes that motions for more definite statement are generally denied in federal court. *Bazal v. Belford Trucking, Co.,* 442 F.Supp. 1089, 1101 (S.D.Fla.1977). However, the allegations of this complaint date back to 1984 and, as defendants state, some of the actions may be barred by the statute of limitations. Accordingly, pursuant to Fed.R.Civ.P. 12(e), the motion for more definite statement will be granted. The plaintiff shall clearly set out which conduct constitutes gross negligence, and which defendant is responsible for what acts. Particular attention should be paid to the time period of said conduct so the defendants may discern if a viable statute of limitations defense exists.

The Court has reviewed the motions and the record, and being otherwise duly advised, it is hereby:

ORDERED AND ADJUDGED as follows:

1) The motions to dismiss Count I for breach of fiduciary duty are GRANTED without prejudice. The plaintiff may file an amended complaint within 20 days, if in good faith the allegations show that defendants breached with conduct constituting "gross negligence" or above.

2) The motions to dismiss Count II sounding in negligence are GRANTED with prejudice.

3) The motions to dismiss Count III are DENIED. The alternative motions for more definite statement are GRANTED as outlined above. The plaintiff shall file its amended complaint, if it so chooses, within 20 days of the date of this order.

4) The motions to dismiss Count IV for breach of contract are GRANTED with prejudice.

DONE AND ORDERED.