**RESOLUTION TRUST CORPORATION**

v.

**Peter J. FARMER, et al.**

v.

**Sandra K. CHITWOOD, et al.**

Civ. A. No. 92–3310.

United States District Court,
E.D. Pennsylvania.

June 8, 1993.

304

John T. Rogers, Marguerite S. Walsh, Mannino, Walsh & Griffith, P.C., Philadelphia, PA, for plaintiff.

Mark A. Nation, William J. Brennan, J. Shane Creamer, Dilworth, Paxson, Kalish & Kauffman, Robert L. Hickok, Jeffery C. Hayes, Pepper, Hamilton & Scheetz, Glenn C. Equi, Diana Andreacchio, Harvey, Pennington, Herting & Renneisen, Ltd., Kean K. McDonald, Jeffrey D. Hutton, Pamela Tobin, Labrum & Doak, Carl Anthony Maio, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Kimberly A. Rushton, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Robert E. Welsh, Jr., Robert E. Welsh, Jr., Philadelphia, PA, Anthony Granato, Mattioni, Mattioni, & Mattioni, Ltd., Philadelphia, PA, Thomas C. Jessee, Jessee & Jessee, Johnson City, TN, Robert C. Heim, William R. Spade, Jr., Dechert, Price & Rhoads, Philadelphia, PA, H. Lamar Mixson, Jill A. Pryor, Bondurant, Mixson & Elmore, Atlanta, GA, for defendants and third-party plaintiffs.

## MEMORANDUM

GILES, District Judge.

The Resolution Trust Corporation ("RTC") as receiver for Horizon Financial F.A. ("Ho-

rizon"), a former savings and loan association, files this action seeking damages against Horizon's former directors and officers ("Director/Officer Defendants")[1] for gross negligence, negligence, and breach of fiduciary duty, and against Horizon's general counsel, the law firm of Stuckert & Yates ("S & Y") and its partners (collectively, the "Attorney Defendants")[2], for negligence, breach of contract, breach of fiduciary duty and aiding and abetting.

## FACTUAL BACKGROUND

The gravamen of RTC's amended complaint is that the defendants, in their various capacities, permitted Horizon to engage in highly speculative, unsound and poorly-documented lending practices, particularly with regard to certain automobile and second mortgage consumer loans known as the "SBL/Brokers South Portfolio." *See* Amended Complaint, at 9–10.

Specifically, the RTC alleges that Horizon's directors and officers made and approved loans in the absence of adequate lending policies and procedures, documentation and due diligence, and in a manner which often exceeded the authority of the lending officers with no regard for the loans' potentially devastating impact upon the institution. *Id.* at 7–8. Additionally, the RTC alleges that Horizon's longtime general counsel, S & Y, whose senior partner, Yates, was primarily responsible for Horizon matters, neither cautioned the institution that it lacked adequate lending policies and procedures nor that the loans were poorly documented and underwritten. *Id.* at 9. The RTC alleges that the S & Y attorneys affirmatively encouraged and participated in the making of such loans by reviewing and approving relevant loan agreements and by attorney Marshall's service on Horizon's Loan Committee during critical times. *Id.*

Further, the RTC alleges that despite clear warnings, including cautions from federal regulators, the defendants continued to make, approve and otherwise encourage the loans, thereby causing million of dollars of losses. *Id.* 16.

Defendants have responded to the RTC's amended complaint by answering some counts, filing motions to dismiss other counts, raising a number of affirmative defenses, and filing a counterclaim.

Addressed herein are the Director/Officer Defendants' motion to dismiss count II (negligence) and count III (breach of fiduciary duty), the Attorney Defendants' motion to dismiss count V (breach of contract) and count VIII (aiding and abetting), the RTC's motion to strike affirmative defenses, to dismiss the counterclaim, and to limit discovery.

## APPLICABLE LEGAL STANDARDS

 In deciding a motion to dismiss for failure to state a cognizable claim, the court must accept as true all of plaintiff's factual allegations and draw from them all reasonable inferences favorable to the plaintiff. *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980). A case should not be dismissed for failure to state a claim unless it appears certain that no relief can be granted under any set of facts that could be proved consistent with plaintiff's allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

 Additionally, motions to strike under Federal Rule of Civil Procedure 12(f) are generally viewed with disfavor because of their potential to be used as a dilatory tactic. If there are either questions of fact or dis-

---

1. The Director/Officer Defendants are Peter Farmer ("Farmer") former Horizon President; Gregor Meyer ("Meyer"), former Chairman of the Board; Richard W. Reynaud ("Reynaud"), former Group Vice President of Lending; and former directors J. Stanley Davis, Robert P. Johnson, Carl N. Wallnau, John J. McCarthy, Jr., Paul Bendik and Louis Tronzo.

2. The Attorney Defendants are the firm of S & Y and individual partners Sidney T. Yates ("Yates"), Don F. Marshall ("Marshall"), John P. Diefenderfer, John Kerrigan, Jr. Richard Danese, Jr., Steven Sailer, William F. Schroeder and Greg B. Emmons.

puted questions of law, the motion to strike must be denied. *See American Standard Life & Accident Insurance Co. v. U.R.L., Inc.,* 701 F.Supp. 527, 531 (M.D.Pa.1988). However, a motion to strike is the "primary procedure" for objection to an insufficient affirmative defense. *See U.S. v. Union Gas Co.,* 743 F.Supp. 1144 (E.D.Pa.1990) citing 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1380 at 782 (1969).

## DISCUSSION

### I. *Director/Officer Defendants' Motion to Dismiss Counts II & III of the Amended Complaint*

Defendants move to dismiss the RTC's negligence claim (count II) arguing that "Pennsylvania law requires a showing of at least gross negligence in order to establish the personal liability of bank directors and officers." Defendants' Motion, at 2. Additionally, they move to dismiss the RTC's breach of fiduciary duty claim (count III) arguing that "[such claim] . . . is subsumed in the gross negligence count." *Id.*

Alternatively, defendants argue that both claims should be dismissed because they are preempted by section 1821(k) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(k) (Supp.1992). *Id.*

In response, the RTC makes two arguments. First, it urges that Pennsylvania law is inapplicable because Horizon is a federally chartered institution. The RTC's Brief, 14. The RTC contends that the duties of the directors and officers of a federally chartered financial institution are governed by federal common law which imposes a simple negligence standard of liability. *Id.*

Secondly, the RTC urges that defendants have misconstrued section 1821(k) in advancing the proposition that gross negligence is the minimum standard of liability for bank directors and officers. In contrast, the RTC contends that section 1821(k) does not

preempt either federal or state common law and, indeed, preserves liability claims based upon simple negligence. *Id.*

■ Section 1821(k) of FIRREA provides as follows:

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action, by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution,

(2) acting based upon a suit, claim or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or

(3) acting based upon a suit, claim or cause of action purchased from, assigned by or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance provided under Section 1823 of this title,

for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State Law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k).

The third circuit has not construed section 1821(k). However, some courts have held that section 1821(k) does not preempt either federal or state law as to the standard of liability for directors and officers.[3] Some courts have held that section 1821(k) does preempt both federal and state law.[4] Still, other courts have taken a middle ground and have ruled that section 1821(k) of FIRREA preempts federal common law and not state

---

3. *See, e.g., FDIC v. Black,* 777 F.Supp. 919 (W.D.Okla.1991); *FDIC v. McSweeney,* 772 F.Supp. 1154 (S.D.Cal.1991), *aff'd,* 976 F.2d 532 (9th Cir.1992). *See also FDIC v. Nihiser,* 799 F.Supp. 904 (C.D.Ill.1992).

4. *See, e.g., FDIC v. Swager,* 773 F.Supp. 1244 (D.C.Minn.1991); *FDIC v. Canfield,* 763 F.Supp. 533 (D.C.Utah 1991), *rev'd,* 967 F.2d 443 (10th Cir.1992).

common or statutory law.[5] After analysis of the statute and relevant case law, this court finds section 1821(k) preempts preceding federal common law standard of liability for directors and officers. In doing so, the court follows the reasoning set forth in *Federal Deposit Ins. Corp. v. Mintz,* 816 F.Supp. 1541 (S.D.Fla.1993). In *Mintz,* the FDIC[6] brought suit against former directors and officers of a failed bank seeking to hold them liable for their alleged negligent management of the bank. The district court granted, in part, the defendants' motion to dismiss the FDIC's negligence claims. It held that section 1821(k) of FIRREA preempts federal common law, permitting actions for simple negligence.[7]

*Mintz* noted that those courts which have interpreted FIRREA as not preempting federal common law have placed great emphasis on the "savings clause" of section 1821(k). The last sentence of the statute reads: "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." 12 U.S.C. § 1821(k). "While such an interpretation is supportable, that result may be attributed to losing 'sight of the forest but for a single tree.'" *Id.* citing *Canfield,* 967 F.2d at 449.

A reading of the savings clause to include federal common law makes the rest of the statute a nullity. Why would Congress need to pass Section 1821(k) if the FDIC already had the ability to defeat state laws with the federal common law of simple negligence? If Congress intended for the federal standard to be the common law simple negligence threshold, then such could have been codified. Instead, Congress chose to enact the gross negligence threshold as the federal standard.

*Id.*[8] We agree with the *Mintz* rationale and hold that all prior federal common law is preempted by section 1821(k).

■ In so ruling, the court does not reach the issue of whether Pennsylvania liability standards allow claims for simple negligence (and/or for breach of fiduciary duty) since the bank is federally chartered and is not incorporated under and regulated by state law. *See Resolution Trust Corporation v. Hess,* 820 F.Supp. 1359 (D.Utah); ("Federal savings and loan institutions are federally chartered, federally regulated, federally insured, and federally organized. Such comprehensive coverage leaves little or no room for state law claims). *See, also,* 15 Pa.C.S.A. § 512 (Pennsylvania standard of care for directors and officers applies only to *domestic* corporations). Therefore, the court finds that the RTC's state claims of simple negligence and breach of fiduciary duty are barred. Accordingly, counts II and III of the amended complaint are dismissed with prejudice.

## II. Attorney Defendants' Motion to Dismiss Counts V and VIII of the Complaint

### 1. Motion to Dismiss Count V

The Attorney Defendants argue that the RTC has failed to plead the material elements of a malpractice claim for breach of contract in count V, and, instead, have recharacterized its tort malpractice claim, already set forth in count IV. Attorney Defendants' Brief, at 2.

Specifically, defendants argue that while a complaint may contain both negligence and

5. *See, e.g., Federal Deposit Ins. Corp. v. Canfield,* 967 F.2d 443 (10th Cir.1992); *Federal Deposit Ins. Corp. v. Mintz,* 816 F.Supp. 1541 (S.D.Fla. 1993); *Federal Deposit Ins. Corp. v. Miller,* 781 F.Supp. 1271 (N.D.Ill.1991); and *Federal Deposit Ins. Corp. v. Isham,* 777 F.Supp. 828 (D.Colo. 1991).

6. Pursuant to FIRREA, the RTC was created as an instrument of the United States and, when acting as conservator or receiver of an institution, it is deemed to be an agency of the United States to the same extent as the Federal Deposit Insurance Corporation. 12 U.S.C. § 1441a(b). Thus, both the FDIC and the RTC enjoy similar regulatory powers. The cases dealing with the regulatory powers of the FDIC, and the claims and defenses to which it is subject, are equally applicable to the RTC.

7. The *Mintz* court, however, did not conclude that Section 1821(k) preempted negligence claims founded in state statutory or common law. *See Mintz,* 816 F.Supp. 1541 (S.D.Fla. 1993).

8. *See, also, Resolution Trust Corporation v. Miramon, et al.,* 1993 WL 35131 (E.D.La.).

breach of contract malpractice claims the latter survives only where the plaintiff can show that the attorney violated or failed to fulfill a specific promise or contractual provision. *Id.* at 8. Here, the Attorney Defendants argue, "at most, the RTC has alleged a failure to exercise the appropriate standard of care. The RTC does not raise any specific contractual provisions or instructions setting forth a task which defendants failed to perform." Attorney Defendants' Brief, at 9.

The RTC counters by arguing that it has pled allegations sufficient to state a malpractice breach of contract claim for both breach of express and implied contract and to satisfy the requirements of Federal Rule Civil Procedure 12. *Id.* at 6.[9]

■ To sustain a claim of tortious legal malpractice under Pennsylvania law, plaintiff must aver that defendant failed to exercise the standard of care that a reasonable attorney would have exercised under the circumstances. *Sherman Industries, Inc. v. Goldhammer,* 683 F.Supp. 502, 506 (E.D.Pa.1988) citing *Trice v. Mozenter,* 356 Pa.Super 510, 515 A.2d 10 (1986). To sustain a malpractice claim under a breach of contract theory, plaintiff must show that there was a contract, express or implied, and that defendant breached a *specific* provision of that contract. *Sherman,* 683 F.Supp. at 506 citing *Lactaid v. Youtie,* Civil Action No. 85–6751 (E.D.Pa. March 18, 1986) [Available on WESTLAW, 1986 WL 3587], *aff'd* 806 F.2d 253 (3d Cir. 1986) (emphasis in the original). "[I]n order to distinguish a contract malpractice claim from a tort claim, the plaintiff claiming under a contract theory must raise an issue as to whether it specifically instructed defendant to perform a task that defendant failed to perform, or as to whether defendant made a specific promise upon which plaintiff reasonably relied to its detriment." *Sherman,* 683 F.Supp. at 506.

■ In count V, the RTC alleges that the Attorney Defendants, as "general counsel" to Horizon, "agreed . . . both orally and in writing, implicitly and expressly, to serve as Horizon's general counsel. This agreement included, *inter alia,* an undertaking to provide the highest level of independent, professionally competent legal services to their client Horizon." Complaint, 24. The RTC also alleges in count V that the "acts set forth in count IV [, its malpractice-tort claim,] hereof constitute malpractice and a breach of the foregoing agreement . . ." *Id.*[10] Such averments, however, are insufficient to allege a malpractice claim for breach of contract.

Although the RTC has pled several allegations in count IV that the Attorney Defendants negligently failed to use due care in its transactions with Horizon, it failed to plead in count V any allegations to show that the Attorney Defendants violated or failed to fulfill a specific promise or contractual provision made to Horizon. Therefore, the court finds that the RTC's count V, which relies on the averments made in count IV, fails to aver the material elements of a malpractice claim for breach of contract under applicable Pennsylvania law. Therefore, count V is dismissed with prejudice.

### 2. Motion to Dismiss Count VIII

The Attorney Defendants move to dismiss count VIII, the RTC's aiding and abetting

---

9. The RTC makes two additional arguments against the Attorney Defendants' assertions. First, it asserts that the Attorney Defendants "misconstrue the general rule that an attorney malpractice claim may be grounded in negligence *or* breach of contract." The RTC's Brief, at 5. Second, the RTC argues that the "Attorney Defendants completely ignore the well-recognized principle that an attorney may be held liable for breach of an implied contract." *Id.* at 5–6. However, these two arguments are inappropriate here since the Attorney Defendants do not dispute RTC's right to allege claims of legal malpractice based upon both tort and contract theories of liability. They dispute that a breach *of an implied contract is sufficient to allege a* contract-based malpractice claim.

10. In Count IV, RTC alleges, essentially, that the Attorney Defendants:

(a) "knew or should have known, foreseen or expected" that Horizon would rely upon their advice regarding the Brokers South loans;

(b) failed to document the loans;

(c) failed to become familiar with banking and thrift issues;

(d) failed to adequately supervise those attorneys working on Horizon matters; and

(e) failed to advise Horizon on various aspects of the subject loans.

Complaint, 21–24.

claim, asserting three grounds: 1) that a claim for aiding and abetting gross negligence is not legally cognizable; 2) that to plead a claim for aiding and abetting, the RTC must allege that the Attorney Defendants consciously decided to engage in, or had the intent to facilitate, wrongful and tortious conduct; and 3) that, in the alternative, count VIII fails to fulfill the particularity requirements of Federal Civil Procedure Rule 9(b). Attorney Defendants' Brief, at 12–24.

In response, the RTC argues that the defendants misinterpret the legal theory of an aiding and abetting claim. It argues that "the RTC need not plead that the Attorney Defendants committed, or consciously intended to participate in the commission of a fraud or that they consciously intended to facilitate wrongdoing." The RTC's Brief, at 25.

■ Although Attorney Defendants argue that a claim for aiding and abetting negligence is not legally cognizable, that contention does not reflect the law of this jurisdiction. *See Kranzdorf v. Green,* 582 F.Supp. 335 (E.D.Pa.1983).[11]

The third circuit has held that to sustain a charge of aiding and abetting plaintiffs have to establish: 1) that there has been a commission of a wrongful act; 2) that the aider-abettor had knowledge of that act; and (3) that the aider-abettor substantially and knowingly participated in the wrong-doing. *Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793, 799 (3d Cir.1978) *cert. denied* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978) citing *Gould v. American–Hawaiian Steamship Co.,* 535 F.2d 761, 79 (3d Cir. 1976); and *Landy v. Federal Deposit Ins. Corp.,* 486 F.2d 139, 162–63 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

■ Although, "mere unknowing participation in another's [wrongful act] is an improper predicate to liability", the "requirement of knowledge may be less strict where the alleged aider and abettor derives benefits from the wrongdoing." *Monsen,* 579 F.2d at 799 citing *Gould,* 535 F.2d at 780. Even in such a situation, the proof offered must establish conscious involvement in impropriety or constructive notice of intended impropriety. *Id.* "Such involvement may be demonstrated by proof that the alleged aider-abettor 'had general awareness that his role was part of an overall activity that is improper.'" *Id.*

■ In count VIII of its amended complaint, the RTC avers that "the Director/Officer Defendants engaged in tortious and wrongful conduct in connection with Horizon's lending practices in general and the SBL/Brokers loans in particular." Complaint, at 26. It further alleges that "the Attorney Defendants knew or recklessly failed to discover the wrongful conduct of the Director/Officer Defendants ... and substantially assisted in the performance of such wrongful conduct ..."[12] *Id.*

Assuming that all of the RTC's factual allegations are true, the court finds that the RTC has stated sufficient facts to make out an aiding and abetting claim. *See, Kranzdorf v. Green,* 582 F.Supp. 335 (E.D.Pa.1983). The RTC has averred that tortious acts were committed (the averred counts against the Director/Officer Defendants), that the wrongful acts were known to the Attorney Defendants, and that the Attorney Defendants played substantial and knowing roles in carrying out those acts.

■ The Attorney Defendants argue, alternatively, that count VIII should be dis-

---

11. *Also see SEC v. Spectrum, Ltd.,* 489 F.2d 535 (2d Cir.1973); and *Restatement (Second) of Torts* § 876 (1979). The comment to Section 876, clause (b) of the Restatement specifically states:

Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon liability of the advisor as participation of physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving

it is himself a tortfeasor and is responsible for the consequences of the other's act. This is true both when the act done is an intended trespass (see Illustrations 4 and 5) and *when it is merely a negligent act* (See Illustrations 6) (emphasis added). The rule applies whether or not the other knows his act is tortious.

12. In count VIII, the RTC lists specific facts that allege how the Attorney Defendants substantially participated in such misconduct.

missed because it fails to satisfy the specificity requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) dictates that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The RTC has not averred fraud or mistake against any of the Attorney Defendants. Its aiding and abetting claim is predicated upon the belief that these defendants knew and participated substantially in tortious acts committed by the Director/Officer Defendants. These alleged tortious acts are not based allegedly upon intentional fraud but on negligent, reckless, or imprudent behavior. Therefore, there is no requirement that such pleading be alleged with the specificity required under Rule 9(b).

Moreover, the court finds that the RTC has alleged with specificity the various acts of aiding and abetting as to the Director/Officer Defendants. The RTC has alleged specifically that the Attorney Defendants affirmatively encouraged and participated in the making of the SBL/South Broker loans by serving on Horizon's loan committee during critical times and by voting in favor of these loans.

Therefore, Attorney Defendants' motion to dismiss the RTC's aiding and abetting claim is denied.

## III. The RTC's Motion to Strike Affirmative Defenses to Dismiss Counterclaim and to Limit Discovery

In answering the RTC's amended complaint, defendants aver numerous affirmative defenses and a counterclaim which fall into five categories: 1) lack of causation because of regulatory negligence by the RTC; 2) imputation of the alleged contributory negligence of Horizon to the RTC; 3) failure to mitigate damages; 4) estoppel, waiver and laches; and 5) lack of causation and intervening or superseding cause based upon nonregulatory conduct.

### 1. Affirmative Defenses and Claims of Regulatory Negligence

The RTC moves to strike defendants' affirmative defenses based upon regulatory negligence and moves to dismiss defendants' recoupment counterclaim, alleging that such claims are barred as a matter of law. The RTC's Brief, at 3–4. Specifically, the RTC points out that federal courts "have overwhelmingly rejected regulatory conduct as a basis for direct claims, affirmative defenses and counterclaims against federal banking regulators." Id. at 6–7. It argues that allowing liability for regulatory conduct "would impermissibly interfere with the regulators' ability to perform their statutorily mandated functions." Id. at 13.

■ Defendants counter that no federal appeals court has held that bank regulators are granted special protection as receivers of failed banks so as to escape liability for regulatory negligence. Nevertheless, this court follows the majority of district courts in recognizing that as a matter of law regulatory conduct cannot stand as a basis for direct claims, affirmative defenses and counterclaims against federal banking regulators. See, e.g., Resolution Trust Corp. v. Kerr, 804 F.Supp. 1091 (W.D.Ark.1992); Resolution Trust Corp. v. Youngblood, 807 F.Supp. 765 (N.D.Ga.1992); Federal Deposit Ins. Corp. v. Lowe, 809 F.Supp. 856 (D.Utah 1992); Federal Deposit Ins. Corp. v. Crosby, 774 F.Supp. 584 (W.D.Wash.1991); Federal Savings and Loan Insurance Corp. v. Burdette, 718 F.Supp. 649, 663–64 (E.D.Tenn.1989); Federal Deposit Ins. Corp. v. Eckert Seamans Cherin & Mellott, 754 F.Supp. 22, 25 (E.D.N.Y.1990).

In a similar suit, the district court in Federal Savings and Loan Insurance Corp. v. Burdette, 718 F.Supp. 649, 663–64 (E.D.Tenn.1989) summarized both the "no-duty" rule and the policy reasons behind it:

In cases of the failure of a savings institution, it is important to the public that the receiver rapidly and efficiently convert the assets of that institution to cash to repay the losses incurred by the insurance fund and the depositors for deposits not covered. Suits by the FSLIC [or the RTC] as a receiver to recover assets, or to recover damages for wrongdoing, should not be encumbered by an examination in court of

the correctness of any specific act of the FSLIC in its receivership. The rule that there is no duty owed to the institution or wrongdoers by the FSLIC/Receiver is simply a means of expressing the broad public policy that the banking laws creating the FSLIC and prescribing its duties are directed to the public good, and that every separate act of the FSLIC as a receiver in collecting assets is not open to second guessing in actions to recover damages from *wrongdoing directors and officers.* If there is no wrongdoing by the officer or director, there can be no liability, but if wrongdoing is established, the officer or director should not be allowed to set up as a defense a claim that would permit the detailed examination of the FSLIC's action as receiver ...

*Id.* (emphasis in the original).

Defendants' affirmative defenses and counterclaims based upon the RTC's regulatory conduct, including regulatory negligence, contributory negligence, reliance upon the regulators, lack of proximate cause and superseding or intervening cause are stricken.

### 2. Affirmative Defenses of Imputed Negligence

The RTC also moves to strike Attorney Defendants' affirmative defenses which impute Horizon's and its employees' alleged contributory negligence to the RTC.

 Defendants argue that their imputed negligence affirmative defenses are properly alleged "to the extent that the RTC, as assignee of Horizon, may be held accountable for the conduct of other Horizon employees who may have caused the claimed losses." Defendants' Brief, at 31. The defendants err in characterizing the RTC as an assignee of Horizon.

The RTC brings this action against the defendants as Horizon's *receiver.* As such, it has the statutorily derived duty to protect the interest of the public and of Horizon's creditors. *See* Amended Complaint, at 1. Under these circumstances, the RTC cannot be held accountable for any negligent acts committed by Horizon or any of its employees. *See Federal Deposit Ins. Corp. v.*

*O'Melveny & Meyers,* 969 F.2d 744 (9th Cir. 1992).

In *O'Melveny & Meyers,* the ninth circuit held that, as a matter of law, the alleged negligence of a failed institution could not be imputed to the FDIC and used to reduce or defeat liability. It stated:

A receiver, like a bankruptcy trustee and unlike a normal successor in interest, does not voluntarily step into the shoes of the bank; it is thrust into those shoes. It was neither a party to the original inequitable conduct nor is it in a position to take action prior to assuming the bank's assets to cure any associated defects or force the bank to pay for incurable defects. This places the receiver in stark contrast to the normal successor in interest who voluntarily purchases a bank or its assets and can adjust the purchase price for the diminished value of the bank's assets due to their associated equitable defenses. In such cases, the bank receives less consideration for its assets because of its inequitable conduct, thus bearing the cost of its own wrong.

Also significant is the fact that the receiver becomes the bank's successor as part of an intricate regulatory scheme designed to protect the interests of third parties who also were not privy to the bank's inequitable conduct. That scheme would be frustrated by imputing the bank's inequitable conduct to the receiver, thereby diminishing the value of the asset pool held by the receiver and limiting the receiver's discretion in disposing of the assets ...

In light of these considerations, we conclude that the equities between a party asserting an equitable defense and a bank are at such variance with the equities between the party and a receiver of the bank that equitable defenses good against the bank should not be available against the receiver. To hold otherwise would be to elevate form over substance ...

*Id.* at 751–752.

Defendants cite *Federal Deposit Ins. Corp. v. Ernst & Young,* 967 F.2d 166 (5th Cir. 1992) for the proposition that a federal bank regulator who brings suit against a third-

party as an assignee of a failed institution is not entitled to any special protection and may be held accountable for any negligence committed by the bank. However, the defendants failed to note that the fifth circuit found "the most significant factor" to be that the FDIC brought the action as an assignee of the failed bank and not as a receiver. *Id.* at 169. *Ernst & Young* emphasized that the bank regulator was not entitled to the same protection as a receiver of the failed bank. That case confirms the legal principle that as a receiver of a failed institution a federal bank regulator cannot be held accountable for negligence caused by the failed institution or its employees.

Therefore, defendants' affirmative defenses based upon imputed negligence theories are stricken.

### 3. Affirmative Defenses of Failure to Mitigate

■ The RTC alleges that defendants' affirmative defenses grounded in failure to mitigate damages should be stricken because the RTC owed no duty to the defendants to mitigate Horizon's damages. The RTC's Brief, at 17.

Defendants appeal to the common law tort doctrine of mitigation of "avoidable consequences" as pertinent in the court's deciphering liability between the parties. See Defendants' Brief, at 27–28. However, the RTC, as Horizon's receiver, does not owe a duty to the defendants for its discretionary regulatory actions in managing the failed bank. *See, e.g., In re Sunrise Securities Litigations,* MDL No. 655, C.A. No. 87–7576 (E.D.Pa. July 29, 1987) (striking affirmative defenses, including failure to mitigate).[13]

Therefore, defendants' affirmative defenses based upon allegations of the RTC's failure to mitigate damages are barred.

### 4. Affirmative Defenses of Laches, Waiver and Estoppel

Defendants allege that the RTC's counsel actively led them to believe that the RTC was not pursuing any lawsuit against them. Defendants' Brief, at 38. They allege that "[d]efendants submitted to the RTC's depositions and produced all their financial records and insurance policies purely in reliance on that premise." *Id.* Consequently, defendants now argue that "[the RTC's] [l]ulling private litigants into believing that their testimony and documents were necessary only to close out the government's files is an affirmative misconduct which the equitable estoppel doctrine is intended to discourage." *Id.*

In response, the RTC moves to strike defendants' equitable estoppel affirmative defenses alleging that such a defense theory is not available. The RTC's Brief, at 20.

It is settled law that the doctrine of equitable estoppel can be invoked as a defense to avoid injustice in certain cases. *Heckler v. Community Health Services, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

> If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act that would not constitute a tort if the misrepresentation were true, the first person is not entitled
>
> (a) to maintain an action of tort against the other for the act, or
>
> (b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired ...

Restatement (Second) of Torts § 894(a) (1977).

---

13. *See, also, Federal Deposit Ins. Corp. v. Green-wood,* 719 F.Supp. 749 (C.D.Ill.1989) (granting FDIC's motion *in limine* to preclude evidence of alleged regulatory negligence in deciding to sell certain assets in bulk following closure of institution); *Federal Deposit Ins. Corp. v. Carlson,* 698 F.Supp. 178 (D.Minn.1988) (striking affirmative defense of failure to mitigate based on allegations that FDIC as receiver had failed to maximize recovery on bad loans); and *Federal Sav. & Loan Ins. Corp. v. Burdette,* 718 F.Supp. 649 (E.D.Tenn.1989) (striking affirmative defense of failure to mitigate based on allegations that FSLIC negligently failed to collect assets following receivership).

Thus, a party claiming estoppel must have relied upon its adversary's conduct in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the party claiming the estoppel did not know, nor should it have known, that its adversary's conduct was misleading. *See Wilber Nat. Bank v. United States,* 294 U.S. 120, 124–125, 55 S.Ct. 362, 364, 79 L.Ed. 798 (1935).

Moreover, "[a]s a rule, courts have been reluctant to apply estoppel against the government. This judicial reluctance is based upon considerations of sovereign immunity, separation of powers and public policy, such as the fear of binding the government by the improper acts of its agents due to fraud and collusion or of the severe depletion of public treasury." *Lovell Mfg. Div. of Patterson–Erie Corp. v. Export–Import Bank of U.S.,* 777 F.2d 894, 898 (3d Cir.1985) (citations omitted). *See, also, Heckler,* 467 U.S. at 60, 104 S.Ct. at 2224. For estoppel to be applied against the federal government, there must be at least some affirmative misconduct on the part of government upon which the defendant detrimentally relied. *Id.* Such factors are not present here.

We assume, for the sake of argument, that the RTC did tell the defendants that they were not going to file suit against them, and, as a result, that defendants subjected themselves to the various "discovery" requests made by the RTC. Nevertheless, the court finds that such an imposition does not warrant invoking equitable estoppel.

Discovery information shared with the RTC prior to its filing of this lawsuit could not have caused defendants any detrimental harm since the liability issues to be litigated arise from actions taken by the defendants long before the RTC took depositions or made requests for documents. The defendants' actions with regard to the loans in question could neither have been altered nor amended at the time that the RTC made its "discovery" requests to the defendants. Therefore, as a matter of law, defendants' equitable estoppel affirmative defenses must be stricken.

The defendants have also pled judicial estoppel as an affirmative defense. They allege that the "RTC took a position in a prior lawsuit, [involving the same loans that are in question here], which is directly contrary to the position it takes in the instant lawsuit." Defendants' Brief, at 33. Specifically, they contend that on October 12, 1989, the RTC filed a complaint in the United States District Court for the Northern District of Georgia, Atlanta Division ("the Georgia Complaint") averring that various principals of Brokers South Company and their lawyers intentionally defrauded Horizon with regard to the Brokers South loans.[14]

Defendants argue that the RTC's allegations are in stark contrast to those allegations pled in the Georgia case. The RTC alleges that the defendants were grossly negligent in making the loans to Broker South in that they failed to conduct adequate due diligence and made the loans for improper reasons without adequate documentation and in contravention of safe and sound banking practices. In the Georgia Complaint, the RTC alleged that defendants justifiably relied upon Brokers South's misrepresentations in making the loans. Defendants' Brief, at 34.

Judicial estoppel is a common law doctrine which operates to preclude a party

14. Specifically, the Georgia Complaint alleges that defendants:

1) concealed transactions from Horizon (Georgia Complaint, at ¶ 56);
2) failed to disclose material terms and conditions of transactions (Georgia Complaint, at ¶ 95);
3) conspired to defraud Horizon without its knowledge or consent by means of fraudulent pretenses, misrepresentations, material omissions and intentional breach of Broker's contractual obligations to Horizon, all for the express purpose of providing a continuing source of illegal funds and income to those defendants settling with the RTC (the principals of Brokers South) (Georgia Complaint, at ¶ 124);
4) repeatedly submitted false and fraudulent misrepresentations to Horizon and repeatedly misappropriated Horizon's funds made available for the use or benefit of Brokers (Georgia Complaint, at ¶ 124); and
5) that Horizon justifiably relied to its detriment on these misrepresentations, including those of counsel for Brokers South in its opinion letters to Horizon (Georgia Complaint, at 152 and 157).

from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.1988) *cert. denied* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).[15] The doctrine "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Industries, Inc. v. N.L.R.B.*, 911 F.2d 1214 (6th Cir.1990) citing *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953) (judicial estoppel precludes a party from "playing fast and loose with the courts").

In order to invoke judicial estoppel, a party must show that the opponent took a contrary position in a prior proceeding and that the prior position was accepted by the court. The doctrine is not intended to clash with the right to plead inconsistent claims as is allowed under Fed.R.Civ.P. 8(e)(2).[16] "[J]udicial estoppel does not bar a party from contradicting itself, *but from contradicting a court's determination that was based on that party's position." Teledyne*, 911 F.2d at 1218 (emphasis added).[17] Since the RTC's prior proceeding in Georgia ended in a settlement agreement, allegations made by the RTC were not adjudicated and adopted by a court. Thus, judicial estoppel cannot be invoked.

Additionally, the affirmative defense of laches must be stricken. Neither the United States government nor its instrumentalities are subject to such defenses. *See, e.g., United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *Federal Deposit Ins. Corp. v. Roldan*

---

*Fonseca*, 795 F.2d 1102, 1109 (1st Cir.1986); and *United States v. 93 Court Corp.*, 350 F.2d 386 (2d Cir.1965) *cert. denied* 382 U.S. 984, 86 S.Ct. 560, 15 L.Ed.2d 473 (1965).[18]

### 5. Affirmative Defenses of Lack of Proximate Cause, Superseding Cause or Intervening Cause Arising from Non–Regulatory Conduct

The RTC moves to strike all affirmative defenses which allege that Horizon's losses were proximately caused by someone other than the defendants or the RTC. The RTC's Brief, at 24. Quoting the adage that "two wrongs don't make a right", the RTC argues, essentially, that the defendants should not be permitted to excuse their own alleged wrongful actions by pointing to other causative factors. *Id.*

A defendant is liable only for the damages which it has proximately caused. Unlike the special circumstances which require the striking of defendants' affirmative defenses of the RTC's regulatory conduct, there are no exceptional reasons for barring the defendants settled right not to be held liable for harms caused by others. Here, what defendants label an affirmative defense is actually only an assertion that RTC cannot prove proximate cause. If defendants believe there are others liable for the harm alleged, the proper avenue is to move to file third-party complaints against those responsible for causing the harms. Accordingly, defendants' styled affirmative defenses of lack of proximate cause are stricken as to plaintiff.

An appropriate order follows.

### ORDER

AND NOW, this 8th day of June, 1993, it is hereby ORDERED that:

---

15. *See, also, In re Phillips*, 124 B.R. 712, 720 (B.C.W.D.Tex.1991) citing *Brandon v. InterFirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988); *Reynolds v. Commissioner*, 861 F.2d 469, 472–73 (6th Cir.1988) (citations omitted).

16. Under Federal Rule of Civil Procedure 8(e)(2), a party may plead alternative legal arguments, even if they are inconsistent or based on inconsistent facts. *See* Fed.R.Civ.P. 8(e)(2).

17. *See, also, Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 599 (6th Cir.1982); *Kingsport v.*

---

*Steel and Roof Structure, Inc.*, 500 F.2d 617 (6th Cir.1974). *Fidelity & Deposit Co. v. Hudson United Bank*, 653 F.2d 766, 778–79 (3d Cir.1981) (an answer to an interrogatory in a different suit does not preclude a party from taking a different position, although the difference may be admitted as evidence at trial).

18. Defendants did not contest the RTC's motion to strike the affirmative defense of laches.

1. The Director/Officer Defendants' .motion to dismiss counts II & III is GRANTED. Counts II & III are DISMISSED with prejudice.

2. The Attorney Defendants' motion to dismiss counts V & VIII (misnumbered) is GRANTED in part and DENIED in part. Count V is DISMISSED with prejudice.

3. The RTC's motion to strike affirmative defenses, to dismiss the counterclaim, and to limit discovery is GRANTED. Defendants' affirmative defenses grounded in regulatory negligence, failure to mitigate damages, imputation of negligence, estoppel, waiver, laches, and lack of proximate cause arising from non-regulatory conduct are all stricken from their answers to the amended complaint. Defendants' counterclaim for recoupment is DISMISSED with prejudice.